GARRISON, Judge.
This is an appeal from a judgment of the district court rendered November 20, 1981 *1274 granting a permanent injunction in favor of plaintiffs Daniel Coates and Laurence So-low and against the Fairgrounds, enjoining it from denying entry into the Fairgrounds to plaintiffs and from harassing or interfering with plaintiffs while they are at the track. The November 20 judgment was consolidated on appeal with their contempt convictions rendered April 20, 1981. From both judgments, which we reverse in part and affirm in part, defendants appeal.
On February 22, 1981, Daniel Coates entered the Racing Secretary’s Office at the New Orleans Fairgrounds to pick up an “overnight sheet.”[1] Coates had routinely entered the Racing Secretary’s Office for the same purpose daily for a number of years. On February 22, however, a Fairgrounds Security Officer ordered Coates out of the office, informing him that the area was restricted to people licensed by the Louisiana State Racing Commission.
On March 5, 1981, Security Chief Irwin Magri, Jr. informed Coates that he was permanently barred from the Fairgrounds due to his unauthorized presence in the Racing Secretary’s Office.
On March 6, 1981, Coates filed suit for a permanent injunction and a temporary restraining order was issued that day. Later that day Coates was again ejected from the track despite the fact that Coates indicated that he had a certified copy of the temporary restraining order issued in his favor. On March 7, Coates was again ordered from the Fairgrounds and again exhibited the temporary restraining order. On this occasion, however, Daniel Coates was forcibly detained in the Security Office for several hours and denied access to his attorney; he was “arrested” for trespassing and transferred to Central Lockup.
On March 8, 1981, Laurence Solow, while in attendance at the Fairgrounds, was informed by Fairgrounds Security that he was permanently barred from the Fairgrounds. No reasons were given for the ejection. On March 10, 1981, Laurence So-low filed a petition for injunctive relief and damages and a temporary restraining order was issued in his favor.
On April 22,1981, the trial judge, providing 26 pages of written reasons for judgment, issued a preliminary injunction in favor of Daniel Coates and held Louie J. Roussell, II, Irwin J. Magri, Jr., Irwin J. Magri, Sr., R.J. Law and the Fairgrounds Corporation in civil contempt, assessing various fines.
The Solow suit and the Coates suit were consolidated for trial and on November 20, 1981, after due hearing, a permanent injunction was issued in favor of Solow and Coates.
On appeal the Fairgrounds argues:
1. The trial judge erred in failing to find that the race track proprietors have the power to exclude or eject; and
2. the trial judge erred in finding the defendants guilty of contempt.
I Contempt
Addressing the secondary issue first, we note that counsel for the Fairgrounds argues that it failed to adhere to the court’s temporary restraining order because of a mistake of law. The Fairgrounds was erroneously under the impression that the temporary restraining order was not binding upon it until service of process was made.
Article 3605 of the Code of Civil Procedure provides as follows:
“An order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained. The order shall be effective against the parties restrained, their officers, agents, employees, and counsel, and those persons in active concert or participation with them, from the time they receive actual knowledge of the order by personal service or otherwise.” (emphasis supplied)
*1275 The “party restrained” was the Fairgrounds Corporation. Whether various individuals in its employ had or did not have personal knowledge is of no moment as the word “they” in line 11 refers to “parties” in line 7. [See quotation from Article 3605.]
In Crucia v. Behrman, 147 La. 144, 84 So. 525 (La., 1920), the Supreme Court examined a case in which the police chief (at that time titled “Inspector of Police”) was orally informed of the existence of an injunction but chose to ignore it, citing as his defense the potential loss of effectiveness of his department should he pay heed to the contentions of attorneys representing those accused of crimes by his department. The Court stated:
“However, in the instant case the existence of the writ ... was a matter of public record, which could easily have been verified by applying either to the civil district court or by communicating with the counsel for the city.” (84 So. at 527)
In the instant appeal, various Fairgrounds employees were shown certified copies of the temporary restraining order. At this point, the burden shifted to the Fairgrounds to verify the existence of the temporary restraining order.
This sanction may be more severe than that which we would have imposed had we been at the trial court level. Under the clear abuse of discretion standard, however, it is not within our powers as mandated by the Louisiana Supreme Court to overrule the trial judge’s considerable discretion in this matter.
II Ejection
The actions complained of occurred February through April, 1981. During the 1981 Legislative Session, House Bill No. 1095 was introduced by Representative Pepe Bru-neau. The bill passed both houses and was approved by Governor Treen on July 28, 1981. It is Act No. 779 and was effective as of September 11, 1981. The permanent injunction was issued November 20, 1981, after the effective date of Act 779. In part, the act provided guidelines for ejection as follows:
“... Such categories shall include, but shall not be limited to, categories of persons:
“(1) Who are not of age.
“(2) Who have been convicted of a felony under the laws of the United States, this state or any other state or country, or any crime or offense involving moral turpitude.
“(3) Who are career or professional offenders as defined by regulations of the commission.
“(4) Who are of notorious or unsavory reputation or whose presence, in the opinion of the commission, would be inimical to the state of Louisiana and its citizens or to the track, meeting, race, or licensed establishment, or to both.
“(5) Who have had a license or permit refused, suspended or withdrawn under R.S. 4:152.
“No person may be excluded or ejected on account of race, color, creed, national origin, ancestry, or gender.” R.S. 4:193
Under the prior statutes, only the stewards had the power to eject:
“A. In the matters pertaining to racing, the orders of the stewards supersede the orders of the officers and directors of the association and the stewards shall have supervision of the daily conduct of racing. The stewards have full authority to investigate, inspect, search and inquire into all matters under their supervision.
:}s sfc * sfs
“C. The stewards have general supervision over all personnel directly connected with racing and shall have access to all stands, weighing rooms, enclosures, etc., used for the purpose of racing and have the authority to determine all questions concerning entries and racing.
“D. The stewards shall order ejected from the grounds of the association any improper or objectionable persons.” R.S. 4:172
*1276 R.S. 4:172 has not been amended by Act 779. Additionally, the new statutory scheme still provides that the power to eject is placed solely in the stewards. The stewards, however, have the power of general supervision, including the power to assign and delegate routine duties. Likewise, R.S. 4:195 imposes a duty to eject on “... any owner, official, supervisor, or employee of a race track, association, or a licensed establishment ... . ” pursuant to the stewards’ order.
In the instant appeal, Coates and Solow were ejected pursuant to an ongoing steward’s investigation of the Fairgrounds. The Fairgrounds personnel, accordingly, must be presumed to have been carrying out the stewards’ orders in this regard.
In examining the testimony and evidence presented relative to Daniel Coates and Laurence Solow, we find that they are clearly subject to ejection under the standards of R.S. 4:193 and R.S. 4:172(D). The evidence is of such an overwhelming nature that we find the trial judge clearly erroneous in his factual determination.
We specifically do not rule on the issue of whether the Fairgrounds is a public corporation, quasi-public corporation or private corporation, nor on the issue of state action versus private action inasmuch as we are not required to address those issues in the light of the prior results herein.
We specifically find that under R.S. 4:172(D) and 195 the stewards have the power to eject and that all Fairgrounds personnel are bound to enforce the orders of the stewards. We specifically find that the trial judge erred in granting the permanent injunction in favor of plaintiffs.
For the reasons discussed IT IS ORDERED, ADJUDGED AND DECREED that the permanent injunction rendered on November 20, 1981 be and hereby is dissolved.
REVERSED IN PART, AFFIRMED IN PART.
KLEES, J., concurs with written reasons.

. An “overnight sheet” is a document which refers to the condition of various horses scheduled to race.