472 So.2d 124 (1985)
STANDARD COFFEE SERVICE COMPANY
v.
Raymond BABIN.
No. 85-CA-70.
Court of Appeal of Louisiana, Fifth Circuit.
June 3, 1985.
David E. Walker, Michael T. Tusa, Jr., New Orleans, for plaintiff-appellant.
Dominick Savona, Jr., Gretna, for defendant-appellee.
Before BOUTALL, CURRAULT and DUFRESNE, JJ.
DUFRESNE, Judge.
This is a suit to compel arbitration relative to a dispute under the terms of an *125 employment contract. The validity of the subject contract is the pivotal issue on appeal.
Raymond Babin was employed by Standard Coffee Service Company as a route sales representative and pursuant to his job, called upon and serviced a designated route of customers.
On October 27, 1981, Babin received a message to appear at Standard's sales office that afternoon. The purpose of the meeting was to execute new employment contracts for all route salesmen. Upon arriving, Babin observed Standard's other eleven (11) route salesmen were also present. Babin signed the new employment contract, however, it differed from the previous contract; in that, it contained an arbitration clause requiring binding arbitration with respect to any disputes under the contract.
Babin contends that he was forced in signing this new contract by the use of threats of dismissal if he refused to sign.
Babin argues that neither he nor any of the other route salesmen were given an advance copy of the new employment agreement, nor were they given an opportunity to review the new employment agreement with counsel or their own representative. Further Babin argues, that he was not allowed to participate in the drafting of the new contract or to discuss and negotiate its contents with any representative of Standard, nor was any compensation offered to him to sign.
Babin asserts that he, together with the other eleven (11) route salesmen, fully understood that if they did not sign the new employment contract, they would be terminated by Standard.
Standard gave no opportunity to Babin or the other eleven (11) route salesmen present on October 27, 1981, to discuss with any representative of the employer the terms of the new employment contract or whether certain clauses in the new agreement were acceptable.
At the time of the signing of the new employment contract, there were no Standard corporate management officers present to discuss the terms of the contract. There was no one from Standard present who was empowered to make any changes in the terms of the employment contract.
On September 12, 1983, Babin was terminated by Standard. Approximately forty-five days after termination, Babin started his own company, Cajun Coffee Service. When Standard Coffee attempted to institute arbitration proceedings, counsel for Babin pointed out to the arbitration panel that certain Louisiana Statutes had been violated by Standard as to the signing of the employment contract which needed to be ruled upon by the Louisiana Courts. The American Arbitration Association deferred action on the matter.
On December 5, 1983, Standard filed a petition to compel arbitration with the District Court for the Parish of Jefferson seeking an order compelling Babin to submit to arbitration. The matter was submitted on briefs and affidavits together with written stipulations of fact. A judgment with written reasons was rendered on March 2, 1984, denying the rule to compel arbitration assigning the following reasons for judgment:
"This proceeding arises out of an employment contract by and between Standard Coffee with the defendant, Raymond Babin, a former employee of plaintiff's company.
The contract provides for binding arbitration which contract appears to be a valid contract on its face and public policy seems to be in favor of arbitration. The real underlying issue in this case is a non-competition clause in the subject contract.
The defendant contends that he was coerced into signing the contract. The defendant and several other employees testified (by affidavit) that they had to sign the new contract (the contract at issue) or be terminated. The plaintiff's witnesses deny this.
The court is of the opinion that this contract, with the arbitration clause, was *126 adhesive in nature and that the defendant was coerced into signing the contract.
Since the court finds the contract was adhesive, the Rule to Compel Arbitration is denied at plaintiff's cost."
From the trial court judgment Standard has appealed and urged whether the affidavit of Raymond Babin, which does not specifically claim he was coerced into signing his employment contract, supports the judge's conclusion that he was so coerced. Secondly, whether the trial judge's conclusion that an employment contract is adhesive has any basis in law or fact and finally, whether Raymond Babin should be required to comply with his contract and submit to arbitration.
Babin introduced and placed into evidence three (3) affidavits: his own, Michael Logrie and Earl Falgoust. All of these individuals were route salesmen who were present at Standard's sales office on October 27, 1981, for the purpose of signing new contracts of employment.
The affidavit of Earl Falgoust indicates that he requested a copy of the new employment agreement in order that his attorney could review it before signing. Roland Bourgeois, sales manager of the New Orleans area for Standard at this time, indicated that this request was not possible and Falgoust could only have a copy of the contract after he had signed it.
Falgoust attests that Bourgeois stated at the October 27th meeting, that anyone who did not sign the new employment contract would be fired. Falgoust then goes on to say in his affidavit that because he decided to not sign the new employment contract he was constantly harassed by E.T. Diaz, Jr., Regional Sales Manager of Standard and Reese Lovelady, Office Administrator of Standard, with phone calls day and night telling him he had to come in and sign the employment contract of October 27, 1981. Falgoust makes it abundantly clear that Standard refused to make any changes in the new agreement at all, and Falgoust was told prior to his quitting that he could not work for Standard without signing the employment contract.
The affidavit of Michael Logrie indicates that he was to report on October 27, 1981, to the sales office of Standard and that he knew nothing as to the purpose of the meeting. Logrie's affidavit goes on further to say that there was a line of route salesmen standing outside of Standard's sales office waiting to be called in individually. He reiterates that no papers were provided by Standard for his review before entering the sales office and none of the other route salesmen had any documents to review before entering the sales office. It is his testimony that he asked Roland Bourgeois what would happen if he didn't sign the document. Bourgeois told him he would be let go. Logrie then attests that he felt he had no choice; he therefore signed the agreement.
Standard submitted an affidavit by Roland Bourgeois who stated the following:
"On October 27, 1981, Raymond Babin, along with all other Standard Coffee route salesmen, were notified by management that there was a new employment contract for them to review and sign.
Mr. Babin was presented with the new employment contract, advised of the differences between the new and old contract and encouraged to ask any questions that he might have about the terms of the new contract.
At no time prior to the meeting on October 27, 1981, or during the meeting was Raymond Babin threatened with being fired or terminated if he refused to sign the contract.
At no time was Raymond Babin intimidated or threatened in any manner so as to force or coerce him into signing the employment contract.
In fact, two of Raymond Babin's fellow route salesmen refused to sign the new contract on October 27, 1981, and they were not terminated. Instead, a meeting was set up at their request with Bob Reily, the president of Standard Coffee, to discuss the terms of the contract.
*127 Further, at no time were any of the route salesmen threatened with termination if they refused to sign the employment contract."
Was there lawful consent which lead to mutuality of agreement? The affidavits of three of Standard's route salesmen (who we have no reason to disbelieve) have stated under oath, that they were brought together for a meeting, having received no reason or understanding of its purpose; were not allowed to review the employment agreement with benefit of counsel; were not allowed to discuss the agreement with management; and were directed to sign the agreement or be fired.
This court is curious why Standard never produced any contradictory affidavit from any of the other route salesmen to refute the assertion of coercion regarding the signing of the "October 27" employment contract.
The law governing the recision of contracts because of consent induced by threats (or violence) is found in Articles 1850 and 1851 of the Louisiana Civil Code of 1870.
"Art. 1850.
Consent to a contract is void, if it be produced by violence or threats, and the contract is invalid.
Art. 1851.
It is not every degree of violence or every kind of threats that will invalidate a contract they must be such as would naturally operate on a person of ordinary firmness, and inspire a just fear of great injury to person, reputation or fortune. The age, sex, state of health, temper and disposition of the party, and other circumstances calculated to give greater or less effect to the violence or threats, must be taken into consideration."
Exactly what standard courts are to apply to determine whether threats have vitiated consent to a contract is difficult to determine, given the apparent contradictory standards in Civil Code Article 1851. The first sentence of Article 1851 lays down an objective standard: Only those types of threats (or degree of violence) which would lead a person of "ordinary firmness" into fearing great harm to person, reputation or property will be found to undermine his free and voluntary consent.
The second sentence, however, requires the court to give weight to the subjective characteristics of the individual (Babin) who claims his or her consent was coerced by threats (or violence) among these characteristics are: age, sex, state of health, temper and the situation of the party (or parties).
In order to determine whether consent was vitiated in this case we shall examine the subjective characteristics of Babin (person claiming that he was forced by threats into agreeing to a contract) and then deciding whether other reasonable persons with same subjective characteristics would have felt forced into signing the employment contract under the same type of threat.
In the case at bar, Babin, whose age is not in the record terminated his employment on September 12, 1983, with Standard after having signed an employment contract on October 27, 1981.
In lieu of live testimony there are affidavits and other documents which the trial court relied upon to resolve this matter. There is little contradictory documentation which would refute these credible individuals and the trial court gave greater weight to Babin's evidence.
Babin was faced with being deprived of his economic security, although a healthy male and able to earn a living. He was in a vulnerable position: either sign or be fired. Given the situation of parties, where one (Standard) has all the power and the other (Babin) is subjected to its arbitrary whim of authority does create an unfair bargaining position.
Thus, considering the evidence contained in the record, we find that, under this set of circumstances, a reasonable person with the subjective characteristics of Raymond Babin would have felt forced into signing the employment contract of October 27, 1981, upon which this suit is based.
*128 Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed.
AFFIRMED.