CIACCIO, Judge.
The Louisiana State Racing Commission and the Fair Grounds Corporation d/b/a the Fair Grounds Racetrack appeal a judgment of the district court which reversed a ruling of the Commission. We reverse the judgment of the district court.
In her reasons for judgment, the district judge provided the following statement of facts and procedural posture of the case.
In suit no. 87-903, plaintiffs, Cornell Wolf, Kenneth Bourque, Larry Melancon and Charles Woods, all jockeys, filed suit against the Louisiana State Racing Commission and the Fair Grounds Corporation seeking judicial review of a decision by the Louisiana State Racing Commission, which upheld the right of the Fair Grounds Corporation to require that each jockey execute an agreement with the Corporation as a prerequisite for participation in the 1986-87 race meeting, which agreement created a statutory employer — employee relationship between the Fair Grounds Corporation and the jockeys who race there.
The agreement stipulated that jockeys are entitled to benefits under the Louisiana Worker’s Compensation Act, as provided in La.R.S. 23:1032 and 23:1061, et seq.. The Fair Grounds Corporation in return, would be protected from tort suits by jockeys who were injured while engaged in horse racing at the race track. Jockeys who signed the Agreements under protest prior to the 1986-87 racing season at the Fair Grounds, first filed a request with the Louisiana State Racing Commission for a Declaratory Ruling pursuant to Title 35, Horse Racing, Part V; Racing Procedures, Chapter 83, Section 8303; and La.R.S. 49:962.
The Commission ruled on December 19, 1986 that the agreement was a valid exercise of the proprietary rights of the Fair Grounds Corporation, and the Corporation could require execution as a condition precedent before allowing a licensed jockey to participate in racing at the Fair Grounds.
This matter was consolidated with a companion suit no. 87-1203, wherein the Fair Grounds Corporation filed a petition for a Declaratory Judgment against the four jockeys named as plaintiffs in the main demand. The Fair Grounds designated these jockeys as fair representatives of the class of jockeys who executed the agreement.
******
*824 These cases were before the Court on Motions for Summary Judgment wherein the parties represented that there existed no material issue of fact. The only matter before the court is whether the owners and/or management of a race track may exclude a jockey licensed by the Louisiana State Racing Commission for failure to sign an agreement with the race track which created a statutory employer-employee relation ship. More succinctly, the court is asked to decide whether a race track may protect itself from liability suits by requiring that jockeys accept the coverage of the Worker’s Compensation Act, specifically La.R.S. 23:1061.
The district judge then went on to decide that the relationship between the Fair Grounds and the jockeys did not satisfy the statutory and jurisprudential requirements for establishing a statutory employment situation. That, however, was not the issue and does not help to resolve this case.
The Fair Grounds and the jockeys contracted to establish between themselves a relationship of employer-employee as effected by Louisiana’s statutory scheme of worker’s compensation, for purposes of dealing with jockey injuries sustained during the athletic pursuit of jockeying. The Fair Grounds wants to prohibit from riding at its racetrack any jockey who refuses to sign the contract; the jockeys argue that such action is illegally coercive and viola-tive of their rights as licensed permittees of the State Racing Commission. The issue is whether the contract is enforceable.
The contract provides that it shall be effective unless a final ruling of the Racing Commission or a court of competent jurisdiction declares that the Fair Grounds has no authority to require a jockey to consent to the agreement as a condition precedent to participating in Fair Grounds racing or that the contract is insufficient to create a worker’s compensation-type employment situation. Pursuant to this contract provision, the jockeys sought a declaratory ruling from the Commission, the regulatory authority with the power to license, and suspend or revoke the licenses of, jockeys and the Fair Grounds. By official order the Commission ruled that the agreement, “which is a condition precedent before a licensed jockey may participate in racing at the Fair Grounds, is a valid exercise of the proprietary rights of Fair Grounds Corporation.”
The jockeys appealed to the district court; the Fair Grounds petitioned the district court for declaratory judgment. The two actions were consolidated, and on motions for summary judgment the district court reversed the ruling of the Commission. The Fair Grounds and the Commission have appealed to this court.
Parties are free to contract for any object that is lawful, possible, and determined or determinable. La.C.C. Art. 1971. The object of this contract, establishment of a worker’s compensation employment situation, is both possible and determinable. The only issue is whether as between the parties it is lawful.
The Fair Grounds argues that its proprietary rights permit it to pursue appropriate risk management and insurance plans concerning potential tort liability for jockey injuries sustained during the athletic pursuit of jockeying. Because it has been unable to purchase general insurance coverage for this potential liability, it has devised this plan of using Louisiana’s worker’s compensation scheme to manage the risk. It argues that without some plan to manage and insure against the risk, its position of exposure to liability for jockey injuries will be uninsured and uninsurable.
The jockeys contend that as licensed permittees of the State Racing Commission they cannot be excluded from the racetrack except in accordance with the rules of the Commission. See La.R.S. 4:193(C). They argue that persons failing to sign the contract in question are not within the categories of persons subject to exclusion or ejection under Commission rules. See La.R.S. 4:193 and LAC 35:1801. They rely on Fox v. Louisiana State Racing Commission, 433 So.2d 1123 (La.App. 4th Cir.1983), writ denied 441 So.2d 217 (La.1983), wherein this court held that a racetrack does not have a proprietary right, for its own rea *825 sons, to unilaterally exclude a permittee of the Commission, as only the stewards and the Commission have authority to deny a permittee access to or racing privileges at any racing facility under the jurisdiction of the Commission. See also Sims v. Jefferson Downs Racing Association, 778 F.2d 1068 (5th Cir.1985). The jockeys argue that the contract and the Commission’s ruling upholding it violate this court’s holding in Fox.
In 1981 when the Legislature added seven new sections to title 4 of the Louisiana Revised Statutes, designated as Sections 191 through 197, to provide for the exclusion or ejection of persons from a race track it provided in Section 2 of its Act that,
Nothing contained in the provisions of this Act should in any way affect or be construed to limit or modify the proprietary rights of any owner of any establishment licensed to operate or conduct any exotic wagering or pari-mutuel wagering or pools.
See La. Act No. 779 of 1981. In Fox, in light of Section 2 of Act No. 779, this court qualified its holding by stating, “By this opinion we do not limit the proprietary rights reserved by the section quoted above.” 433 So.2d at 1127. We went on, however, to hold that,
these rights do not, and the Legislature did not intend these rights to extend to those persons licensed by the Louisiana State Racing Commission. This legislative intent was made evident by the passage of Act No. 629 of 1982 adding paragraph C to La.R.S. 4:193, which provides:
C. No permittee in good standing shall be denied access to or racing privileges at any racing facility except in accordance with the rules of the Louisiana Racing Commission.

Id.

Fox (and Sims) dealt with matters clearly within the power, authority, and jurisdiction of the State Racing Commission. The holdings of Fox are limited necessarily to that context; the broad language of Fox is broadly applicable within that context. Concerning matters beyond that context, we apply the qualification that we did not limit the proprietary rights reserved by Section 2 of La. Act No. 779 of 1981.
The State, through the Racing Commission or otherwise, does not own and operate horse racing tracks. Cf. Sims v. Jefferson Downs Racing Association, above. Exercising its police power, the state, through the Commission, regulates horse racing “to encourage forceful and honest statewide control of horse racing for the public health, safety, and welfare by safeguarding the people of this State against corrupt, incompetent, dishonest and unprincipled horse racing practices.” La.R.S. 4:141. The creation, duties, powers, and structure of the State Racing Commission are dedicated to this purpose. See La.R.S. 4:141 et seq.
Risk management and insurance plans for financial protection against potential racetrack tort liability for jockey injuries sustained during the athletic pursuit of jockeying are not matters specifically provided for within the duties, powers, and jurisdiction of the Commission, and do not fall within the sphere of the broadly articulated purposes supporting state regulation of horse racing. We agree with the Commission that these matters are among the proprietary rights reserved to the owners and operators of the racetracks. We do not consider whether within the context of regulating horse racing the State may regulate these proprietary rights, we only recognize that it has chosen not to do so.
Having decided that these matters are not within the duties, powers, and jurisdiction of the Commission as currently empowered, having been reserved to the owners and operators of the racetracks, we conclude that this object of the contract here in question is not unlawful for usurping authority vested exclusively in the Commission. No other reason having been offered why the contract object might be unlawful, we find that the object of the contract is lawful. Accordingly, we hold that the Fair Grounds may require as a condition precedent to jockeys being permitted to ride at its racetrack that the jockeys agree to resolve claims for jockey *826 injuries sustained during the athletic pursuit of jockeying under the statutory scheme of Louisiana’s worker’s compensation laws. We, therefore, reverse the judgment of the district court declaring the contract unenforceable, and render judgment declaring the contract to be valid and enforceable as an exercise of the proprietary rights reserved to the owners and operators of horse racing tracks within the State regulatory scheme for horse racing.
REVERSED.