545 So.2d 976 (1989)
Cornell WOLF, Kenneth Bourque, Larry Melancon and Charles Woods
v.
The LOUISIANA STATE RACING COMMISSION and Fair Grounds Corporation d/b/a Fair Grounds Racetrack.
consolidated with
FAIR GROUNDS CORPORATION
v.
Cornell WOLF, Kenneth Bourque, Larry Melancon, Charles Woods and Jockey's Guild, Inc.
No. 88-C-3064.
Supreme Court of Louisiana.
June 19, 1989.
Rehearing Denied September 11, 1989.
Mack E. Barham, Robert E. Arceneaux, Barham & Assoc., New Orleans, Roger D. Smith, Jackson & Nach, for applicant.
William J. Guste, Jr., John E. Jackson, Jr., William S. Vincent, New Orleans, Robert M. Braiwick, Jr., for respondents.
COLE, Justice.[*]
The Fair Grounds Corporation required jockeys who race at its track to sign an agreement whereby the track would pay worker's compensation benefits to an injured jockey in exchange for the jockey's waiver of the right to sue the track for its *977 negligence. After the jockeys signed under protest, both the jockeys and the Fair Grounds asked the Louisiana State Racing Commission to rule on the validity of the agreement. The Commission found the agreement was a valid exercise of the Fair Grounds' proprietary rights. The plaintiffs and the defendants then filed separate suits in district court, the jockeys seeking review of the commission decision and the Fair Grounds seeking a declaratory judgment concerning the agreement's validity. The trial judge ruled for the jockeys, finding the agreement invalid. However, the court of appeal reversed, agreeing with the commission that the agreement was within the scope of the racetrack's reserved proprietary rights 532 So.2d 822. The jockeys applied to this Court and we granted writs to determine whether the contract is valid.

ISSUE RESOLUTION
The immediate question before us is whether the Fair Grounds as a private corporation has a basic proprietary right to condition race participation on execution of an agreement relegating duly licensed jockeys to the remedies afforded under worker's compensation. After consideration, we agree with the jockeys this action is illegally coercive and violates their rights as licensed permittees of the Louisiana State Racing Commission. Thus the exclusion of jockeys for failure to execute such an agreement can not be a valid exercise of the Fair Grounds' reserved proprietary rights. Finding the agreement invalid, we reverse the court of appeal.

FACTS
Before the beginning of the 1986-87 racing season, the Fair Grounds Corporation announced that jockeys licensed by the commission would not be permitted to participate in race meetings unless they first signed a contract agreeing to accept worker's compensation benefits, La.R.S. 23:1021, et seq., as sole remedy for injury resulting from either the racetrack's or the jockeys' negligence. Because the jockeys are independent contractors, there is no employer-employee relationship between the jockeys and the racetrack and the Fair Grounds would ordinarily have no obligation to pay worker's compensation benefits. In exchange for the contractual imposition of the benefits provided by the Worker's Compensation Law, the jockeys were required to waive their right to sue the racetrack in tort. Pointing to the "inherent danger of personal injury" involved in racing, the Fair Grounds alleges the contract is necessary because it has been unable to obtain liability insurance to cover the jockeys while they are engaged in the "athletic pursuit of jockeying."
In accord with this plan to immunize itself from tort liability, the Fair Grounds has refused since 1986 to allow any jockey who will not sign the agreement to race at its track. The jockeys, meanwhile, consider the contract an attempted forced waiver of rights and signed the agreement only after a clause was added allowing them to sign under protest. After signing the agreement, the jockeys filed their request with the Louisiana State Racing Commission for a declaratory ruling. In its ruling, the racing commission said the Fair Grounds could require the jockeys to sign the agreement as an exercise of "proprietary rights" reserved to racetracks by the legislature. Acts 1981, No. 779, § 2. (See, LSA-R.S. 4:191 note.)
The jockeys' suit in district court seeking judicial review of the commission's decision and the Fair Grounds' suit seeking a declaratory judgment on the validity of the agreement were consolidated. On cross motions for summary judgment, the trial court ruled the agreement invalid, concluding no statutory employment relationship exists between the two and that such a relationship could not be created by contract.
The court of appeal reversed, reasoning questions of risk management and insurance plans for financial protection against potential racetrack liability for jockey injuries are not matters specifically within the powers and jurisdiction of the racing commission. Thus, the court of appeal agreed with the commission that these matters are within the scope of authority reserved to *978 the owners and operators of racetracks. Acts 1981, No. 779, § 2.

ANALYSIS
The Fair Grounds Corporation concedes in its brief that the jockeys can never be employees of the Fair Grounds since it cannot have an interest in the outcome of the races conducted on its premises. Instead, the Fair Grounds asserts it merely provides its facility for the use of horse owners, trainers, and the jockeys they hire.
Terms of the Worker's Compensation Law apply to those in an employer-employee relationship and to those in a so-called statutory employer-employee relationship, i.e., to a principal and his contractor's employees. La.R.S. 23:1031, et seq.; La.R.S. 23:1061, et seq. See also Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). Unless the contract at issue is valid, the statutory worker's compensation provisions are not applicable to the relationship between the Fair Grounds and the jockeys.
The Fair Grounds asserts the issue is whether parties can mutually contract into the benefits of the worker's compensation scheme. We begin with the premise that parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. The question of whether the object of this unilateral contract is possible, that is whether parties can contractually submit to the terms of the Worker's Compensation Law, appears to be a novel one under both our law and the law of other jurisdictions. We need not reach that question in this case, however, since the issue can be resolved on other grounds.
The jockeys raise two significant challenges to the legality of this agreement. First, they contend under state law the Fair Grounds cannot unilaterally exclude from its premises a person holding a valid Louisiana State Racing Commission license. Second, the jockeys assert the superior bargaining position of the Fair Grounds and coerciveness of the agreement constitute duress sufficient to vitiate consent. We consider each argument in turn.
1. Authority of the Fair Grounds
Title 4, Chapter 4, Part I of the Louisiana Revised Statutes governs horse racing. These statutes vest the Louisiana State Racing Commission with authority to grant, refuse, suspend, or withdraw licenses to jockeys, horse owners, agents, trainers and others. La.R.S. 4:150 and 4:152. The stewards, as agents of the commission, have supervision of the daily conduct of racing and of personnel directly connected with racing. La.R.S. 4:172(A) and (C). The stewards "shall order ejected from the grounds of the association [race track] any improper or objectionable persons." La. R.S. 4:172(D). Prior to amendments to Chapter 4 in 1981 and 1982, the power to eject or to suspend grounds privileges was solely in the hands of the stewards. Coates v. Fairgrounds Corp., 423 So.2d 1273, 1275 (La.App. 4th Cir.1982).
In 1981, the legislature enacted Act No. 779, § 1, now La.R.S. 4:191-4:197. These provisions expanded the commission's authority to exclude certain persons from racetracks and established notice, hearing and exhaustion of remedy requirements for persons so excluded. In particular, La.R.S. 4:193(A) and (B) give the commission power to establish categories of persons who may be excluded and mandate that certain persons must be excluded from the grounds:
§ 193. Categories of persons subject to exclusion and ejection; civil liberties
A. The commission shall adopt and promulgate rules and regulations establishing categories of persons who may be excluded or ejected from a track, race meeting, race, or licensed establishment. Such categories shall include, but shall not be limited to, categories of persons:
(1) Who are not of age.
(2) Who have been convicted of a felony under the laws of the United States, this state or any other state or country, or any crime or offense involving moral turpitude.
(3) Who are career or professional offenders as defined by regulation of the commission.
(4) Who are of notorious or unsavory reputation or whose presence, in the *979 opinion of the commission, would be inimical to the state of Louisiana and its citizens or to the track, meeting, race, or licensed establishment, or to both.
(5) Who have had a license or permit refused, suspended or withdrawn under R.S. 4:152.
B. No person may be excluded or ejected on account of race, color, creed, national origin, ancestry, or gender.
As a part of the legislative enactment of La.R.S. 4:191-197, the legislature included the following provision:
Nothing contained in the provisions of this Act should in any way affect or be construed to limit or modify the proprietary rights of any owner of any establishment licensed to operate or conduct any exotic wagering or pari-mutuel wagering or pools.
1981 Acts, No. 779, § 2.
The racing commission relied upon this reservation of proprietary rights to owners of racetracks in ruling on the validity of the agreement at issue. The commission also relied on an opinion by the state attorney general dealing with the question of whether Evangeline Downs could set prices for items such as stall rental and administrative fees without approval of the racing commission. The Attorney General observed the legislature's purpose in establishing the commission's "close supervision" of racing was to safeguard "the people of this state against corrupt, incompetent, dishonest and unprincipled horse racing practices." Opinion of the Attorney General, No. 86-153 (March 18, 1986). See also, La.R.S. 4:141; La.R.S. 4:148. In light of that purpose and in view of the failure of both the statutes and the Rules of Racing to address the matter of fees charged by racetracks for goods and services, the Attorney General said these matters were irrelevant to the legislative intent, thus beyond the scope of the commission's supervision. Therefore, he concluded individual race associations could set their own fees for such items in exercise of their reserved proprietary rights.
The racing commission applied the foregoing reasoning to the situation before us. We believe this reasoning is flawed. The statutes are silent as to supervision of fees charged by race associations for goods and services. However, the legislative intent is clear that the commission and the stewards are to decide who may participate in racing activities. We do not believe the statutory scheme will allow the Fair Grounds to unilaterally bar from access those licensed by the commission to participate in race meets.
Of relevance to our determination is La. R.S. 4:193(C), which was enacted subsequent to and in modification of the reservation of proprietary rights to race associations:
C. No permittee in good standing shall be denied access to or racing privileges at any racing facility except in accordance with the rules of the Louisiana State Racing Commission.
The term "permittee" is defined by La. R.S. 4:143(7) as "any person, partnership, corporation or business entity receiving a license, permit or privilege from the commission to engage in a business, occupation or profession on the grounds of an association licensed to conduct a race meeting in Louisiana by the commission." The jockeys, who must meet licensing requirements before being allowed to participate in race meets, La. State Racing Commission Rules of Racing, 46:701, et seq., clearly fall within the definition of permittees.
In interpreting La.R.S. 4:193(C), other courts have concluded a private racetrack does not have a proprietary right, for its own reasons, to unilaterally exclude a permittee of the Louisiana State Racing Commission from its racetrack. Sims v. Jefferson Downs Racing Association, Inc., 778 F.2d 1068, 1074 (5th Cir.1985); Fox v. Louisiana State Racing Commission, 433 So.2d 1123, 1126 (La.App. 4th Cir.1983), cert. denied, 441 So.2d 217 (La.1983). Although Sims suggests that R.S. 4:193(C) limits the proprietary rights of the racetrack only with respect to permittees and that the 1981 amendment, 1981 Acts, No. 779, § 2, preserved the proprietary rights of the racetrack with respect to others, we do not reach that question since it is beyond the scope of the issue before us.
*980 We agree with the holdings in Sims and Fox and find the unilateral exclusion of a permittee by the Fair Grounds is inconsistent with the procedures established by the legislature for revocation of a license or the privileges thereunder, which require notice and a hearing. Exclusion of permittees, therefore, may be accomplished by private parties only through the stewards, acting under the Rules of Racing, or in accordance with a valid Commission order. Sims, 778 F.2d at 1075-76. The Fair Grounds' requirement that jockeys sign an agreement before they participate in race meets serves to exclude them from the racetrack and thus exceeds the scope of the authority given to private parties engaged in the conduct of racing.
2. Contractual Issues
The Fair Grounds argues public policy favors the contract by allowing the parties to enter into the mutual compromise provided for by the worker's compensation laws. Under the contract's terms, worker's compensation would be awarded regardless of whether the track or the jockey is at fault; therefore, a jockey injured while racing at the track would receive medical and other financial benefits. Because the burden of these costs might otherwise fall on the state, the Fair Grounds argues the agreement furthers the general good.
Further, the Fair Grounds asserts the jockeys have failed to show the theory of adhesion has been adopted as a vice of consent under our law. Such a showing is unnecessary, however, if consent can be shown to have been obtained through error, fraud, or duress since these are grounds upon which consent is vitiated. La.C.C. art. 1948.
Duress is sufficient to vitiate consent when it is of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. La.C.C. art. 1959. Duress results when "a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent. The result of this type of duress is that the contract that is created is voidable by the victim." La.C.C. art. 1959, official comment (b).
Although a threat of doing a lawful act or a threat of exercising a right does not constitute duress, a threat of doing an act that is lawful in appearance only may constitute duress. La.C.C. art. 1962. We have concluded the Fair Grounds is without authority to exclude a permittee from race participation, such authority being vested in the stewards and the racing commission. The attempt to do so is, therefore, unlawful, even though clothed with the appearance of legality. While this alone may be sufficient to constitute duress, further evidence of duress includes the fact that the jockeys signed the agreement under protest, a clause to that effect having been added at the jockeys' insistence. The contract also makes clear that only jockeys who signed the agreement would be allowed access to the racetrack. Refusal to sign, then, would have barred the jockeys from practice of their livelihood.
This situation is not unlike that in Standard Coffee Service Co. v. Babin, 472 So.2d 124 (La.App. 5th Cir.1985), where an employee was given the option of signing an employment contract with a binding arbitration clause or being terminated. Although public policy favors arbitration clauses, the court of appeal held the contract void, since a reasonable person would have felt forced into signing the employment contract when faced with being deprived of economic security for failure to sign. Id. at 127. Therefore, considering the duress under which the employee signed, there was never any mutuality of agreement. Given the situation of the parties, where one has all the power and the other is subjected to the arbitrary whim of authority, an unfair bargaining position is created. Id.
The Rules of Racing require jockeys to fulfill their scheduled riding engagements or suffer consequences except in warranted circumstances:
Every rider shall fulfill his duly scheduled riding engagements, unless excused by the stewards. No rider shall be *981 forced to ride neither [sic] a horse he believes to be unsound, nor over a racing strip he believes to be unsafe. However, (1) if a rider voluntarily cancels a duly scheduled riding engagement for any reason other than the aforementioned, he shall not be permitted to fulfill any riding engagements thereafter on that race day and (2) if the stewards find a rider's refusal to fulfill a riding engagement is based on a personal belief unwarranted by facts and circumstances, such rider may be subject to disciplinary action. La. State Racing Commission Rules of Racing, 46:729 (Supp.1989).
Because of the superior bargaining strength of the Fair Grounds and the economic vulnerability of the jockeys, it is reasonable to conclude the jockeys would have felt forced into signing the contract at issue. The fear of economic deprivation was sufficient to meet the level of duress required to vitiate consent. Thus, we find the contract was not a bargained for agreement due to lack of mutual consent.

CONCLUSION
We hold the agreement unlawful and unenforceable. It is beyond the scope of the authority of the Fair Grounds to unilaterally condition the participation by jockeys in its race meetings, thus in effect excluding them in violation of the statutory scheme. In addition, the contract does not represent a bargained for agreement because the jockeys' consent was obtained through duress, thus vitiating consent. By the contract's own terms, it is deemed null and void ab initio and has no effect whatsoever. Accordingly, we reverse the court of appeal. All costs are to be borne by the Fair Grounds Corporation.
REVERSED.
WATSON, J., recused.
NOTES
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit, participated in the decision of this case as Justice Ad Hoc in place of Watson, J., recused. Judge Pike Hall, Jr. of the Court of Appeal, Second Circuit, participated in the decision of this case as Justice Ad Hoc in place of Lemmon, J., not sitting.