796 So.2d 791 (2001)
BROUSSARD, BOLTON, HALCOMB & VIZZIER
v.
Moses Junior WILLIAMS.
No. 2001 0219-CA.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
*792 Dorwan Gene Vizzier, Broussard, Bolton, Etc., Alexandria, LA, Counsel for Plaintiff/Appellee Broussard, Bolton, Halcomb & Vizzier.
Moses Junior Williams, Attorney at Law, Tallulah, LA, Counsel for Defendant/Appellant Moses Junior Williams.
Court composed of JIMMIE C. PETERS, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
PETERS, Judge.
This appeal involves the division of a $7,500.00 attorney fee derived from a workers' compensation case. Moses Junior Williams appeals a judgment rendered against him and in favor of the law firm of Broussard, Bolton, Halcomb & Vizzier, a limited liability partnership (hereinafter sometimes referred to as "the Broussard firm" or "the firm"), in the amount of $6,500.00. For the following reasons, we affirm the trial court's judgment in all respects.

DISCUSSION OF THE RECORD
Little of the factual basis giving rise to this litigation is in dispute. On November 29, 1988, the Broussard firm entered into a written contract with Eliza Jones wherein the firm agreed to represent Ms. Jones in a claim against her employer and its insurer for workers' compensation benefits. Ms. Jones is a resident of Ferriday, Concordia Parish, Louisiana. Roy S. Halcomb, Jr., one of the partners in the firm, represented the firm in executing the contract and was the attorney directly responsible for Ms. Jones' representation. Mr. Halcomb was successful in persuading the employer's workers' compensation insurer to begin paying weekly disability benefits and medical expenses associated with her employment accident. Over the approximately four years that Mr. Halcomb represented Ms. Jones, she received workers' compensation benefits totaling $56,674.00 and the insurer paid medical expenses on her behalf totaling $53,363.37. For the services rendered during this period, the Broussard firm received approximately $400.00 in legal fees.
During the four years of representation, Mr. Halcomb successfully worked through numerous issues related to Ms. Jones' case. In late 1992, the insurer offered to settle the litigation for a lump sum payment of $54,000.00 to Ms. Jones and for the payment of any outstanding medical and travel expenses. Mr. Halcomb discussed the settlement offer with Ms. Jones, and she authorized him to accept it on her behalf. Mr. Halcomb then communicated his client's acceptance of the offer to the insurer by correspondence dated October 26, 1992. Upon receipt of the settlement documents, Mr. Halcomb again discussed the settlement with Ms. Jones. *793 Instead of signing the settlement documents, Ms. Jones asked for copies of the documents and took them with her to review. A few days after taking the settlement documents for review, Ms. Jones returned to Mr. Halcomb and advised him that she had changed her mind and would not settle for the amount tendered.
By correspondence dated December 18, 1992, Mr. Halcomb advised Ms. Jones that the firm would no longer represent her in the workers' compensation claim. Mr. Halcomb testified that he withdrew the firm's representation because he felt "uncomfortable" in continuing to represent Ms. Jones after having communicated a settlement agreement with the insurer and then having his client withdraw. In essence, Mr. Halcomb was concerned that the firm's reputation and credibility with the insurer had been compromised because his client had failed to complete an agreed-upon settlement. In the December 18 letter, Mr Halcomb also suggested that Ms. Jones retain other counsel and informed Ms. Jones that he expected her new counsel to protect the firm's earned fee as well as expenses incurred on her behalf. By a letter dated the same day, Mr. Halcomb forwarded the November 29, 1988 employment contract to the Concordia Parish Clerk of Court's office for filing. The Clerk filed the contract in the parish mortgage records on December 21, 1992. Mr. Halcomb forwarded a certified copy of the recorded contract to the insurer.
After the firm withdrew its representation of Ms. Jones, she retained the defendant, Moses Junior Williams, to represent her. Mr. Williams, who is a Tallulah, Louisiana lawyer, contacted the Broussard firm. In a telephone conference on February 4, 1993, Mr. Williams and Mr. Halcomb discussed the transfer of the client's file as well as the potential fee dispute. Mr. Williams confirmed this conversation by a letter forwarded to Mr. Halcomb the next day. In the letter, Mr. Williams assured Mr. Halcomb that any "sums you have expended in [representing Ms. Jones] will be protected" and that "we will make every effort to work toward an amicable and equitable distribution of any attorney fees in connection with this matter, whether this matter is concluded by settlement or judgment."
Thereafter, Mr. Williams negotiated a new settlement on behalf of Ms. Jones for $65,000.00 instead of $54,000.00. He informed Mr. Halcomb of the settlement by telephone on May 18, 1992. On that same day, Mr. Halcomb wrote to Mr. Williams suggesting that the earned fee be divided such that the firm would receive two-thirds and Mr. Williams would receive one-third of the total amount. On July 15, 1993, the workers' compensation insurer forwarded to Mr. Williams settlement papers and a $65,000.00 draft made payable to Ms. Jones, Mr. Williams, and Mr. Halcomb.
By correspondence dated July 19, 1993, Mr. Halcomb informed Mr. Williams that he would not endorse the settlement draft unless the $7,500.00 attorney fee was placed in trust pending settlement of the fee division dispute. Mr. Halcomb also submitted a new offer of settlement. The correspondence reflects an offer by Mr. Halcomb to accept $4,000.00 and allow Mr. Williams the remaining $3,500.00. Mr. Halcomb attached a proposed agreement for Mr. Williams to execute. The agreement reads in pertinent part as follows:
I, Moses Junior Williams, do hereby agree to withhold attorney fees in the amount of $7,500.00 from the settlement proceeds due Eliza Jones and I further agree to place the full amount of the attorney fees in my trust account and this money will remain in my trust account and will not be disturbed or otherwise withdrawn unless and until the dispute *794 that exists between myself and Roy S. Halcomb, Jr., concerning division of the attorney fees, is fully resolved by agreement, binding arbitration or a final executory judgment of the OWCA and/or the Court. I hereby personally obligate myself to Roy S. Halcomb, Jr., for the full amount that he might eventually be entitled to receive as his portion of the attorney fees up to, but not exceeding, the full amount that is being withheld from Ms. Jones' settlement to cover all attorney fees which, as above noted, is $7,500.00.
This further confirms that I have presented a check to Roy S. Halcomb, Jr., in the amount of $620.63 which has been tendered to him as payment in full for the cost that he has incurred in connection with his representation of Ms. Jones, and this payment is not intended to affect in any way Roy S. Halcomb, Jr.'s rights with regard to his claim for any amount that might be owed him as attorney fees for the legal services that he has rendered Ms. Jones in accordance with his Employment Contract.
On July 21, 1993, Mr. Williams executed the agreement and, on the next day, mailed the original to Mr. Halcomb. Based on this agreement, Mr. Halcomb endorsed the settlement draft and the workers' compensation settlement was consummated.
The attorney fee dispute lay dormant until October of 1996 when Mr. Halcomb realized that he and Mr. Williams had never reached a settlement concerning the money in trust. Mr. Halcomb contacted Mr. Williams and discovered that, contrary to the agreement, Mr. Williams had withdrawn the $7,500.00 from the trust account. This discovery led to the Broussard firm filing the instant suit against Mr. Williams. In the suit, the firm sought division of the workers' compensation attorney fee as well as damages for wrongful conversion of its share of the fee by Mr. Williams.
After trial, the trial court awarded the Broussard firm $5,500.00 as its share of the workers' compensation fee and $1,000.00 as general damages for Mr. Williams' wrongful conversion of the attorney fee. Mr. Williams asserts four assignments of error in his appeal.

Assignment of Error No. 1.
Mr. Williams first argues that the trial court erred in rejecting his declinatory exception asserting the trial court's lack of subject matter jurisdiction. He argues that jurisdiction over the dispute falls under the Louisiana Workers' Compensation Act and within the workers' compensation court system. In support of his position, he directs us to La.R.S. 23:1310.3(E), which provides:
Except as otherwise provided by R.S. 23:1101(D) and 1378(E), the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including but not limited to workers' compensation insurance coverage disputes, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for in this Chapter, and cross-claims between employers or workers' compensation insurers for indemnification or contribution.
However, in Ellender's Portable Buildings, Inc. v. Cormier, 00-1724, p. 3 (La. App. 3 Cir. 6/6/01); 787 So.2d 601, 603, we stated:
In applying this statute to jurisdiction questions, we have drawn a distinction between those matters which "arise out of the Worker's Compensation Act, rather than merely relate to worker's compensation in general." Covington v. Able Roofing, Inc., 95-1126, p. 3 (La. *795 App. 3 Cir. 3/6/96); 670 So.2d 611, 613. If the issue to be considered arises out of the Act, jurisdiction is vested in the OWC; if it merely relates to the workers' compensation claim, the OWC does not have subject matter jurisdiction. Id.

In the instant case, the issue under consideration involves a fee dispute between two attorneys. This issue relates to a workers' compensation claim only peripherally in that the claim provided the basis for the payment of the fee. The fee dispute simply does not "arise out of the Worker's Compensation Act." Thus, the trial court did not err in overruling Mr. Williams' exception of lack of jurisdiction, and we find no merit in Mr. Williams' first assignment of error.

Assignment of Error No. 2.
In response to the firm's suit, Mr. Williams also filed a peremptory exception of prescription, which the trial court rejected. In this assignment of error, Mr. Williams asserts that the exception should have been maintained. Specifically, he asserts that the firm's claim is subject to the three-year prescriptive period of La.Civ.Code art. 3494(1) because it is "[a]n action for the recovery of compensation for services rendered." Were this to be a dispute between Ms. Jones and the Broussard firm, we would agree with Mr. Williams. However, that is not the case. Rather, this is an action to recover under a contractual agreement. "Actions on contracts are normally regulated by the 10-year prescription." Schoen v. Walling, 31,598, p. 4 (La.App. 2 Cir. 2/24/99); 728 So.2d 982, 984. Accordingly, the trial court did not err in overruling the exception of prescription, and we find no merit in this assignment of error.

Assignment of Error No. 3.
In this assignment of error, Mr. Williams first asserts that the trial court erred in finding that a contract existed between the parties. Specifically, he contends that "[t]here was never an agreement that the plaintiff was entitled to attorney fees. Defendant simply signed plaintiff's letter to hold the fees in trust in order to permit plaintiff a reasonable amount of time to pursue a legal remedy to have the issue decided, if he so desired." He construes his signature on the July 21, 1993 agreement as creating a unilateral agreement from which he could withdraw at any time.
"A contract is unilateral when the party who accepts the obligation of the other does not assume a reciprocal obligation." La.Civ.Code art. 1907. "A contract is bilateral, or synallagmatic, when the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other." La.Civ. Code art. 1908. The agreement that Mr. Williams signed is clearly a bilateral contract. Mr. Williams promised to hold the disputed attorney fees in trust in exchange for Mr. Halcomb's endorsement of the workers' compensation check. Thus, the agreement created reciprocal obligations. "[P]arties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971." Wolf v. Louisiana State Racing Comm'n, 545 So.2d 976, 978 (La.1989). The trial court did not err in finding that a valid contract existed between the parties.
In this assignment of error, Mr. Williams also asserts that the trial court erred in finding conversion occurred. We disagree with this assertion as well.
"Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession (permanently or for an indefinite time) is a conversion." Simon v. Fasig-Tipton Co., 92-173, p. 25 (La.App. 3 Cir. 3/22/95); 652 *796 So.2d 1351, 1369. "As the court noted in Fontana v. Barham, 707 F.2d 221, 226 (5th Cir.1983) `an attorney has a cause of action for fees based on the employment contract with his client as well as a cause of action in conversion against anyone who unlawfully appropriates those fees.'" Murray, Murray, Ellis, Braden & Landry v. Minge, 516 So.2d 213, 216 (La.App. 4 Cir.1987), writ denied, 516 So.2d 369 (La. 1988).
Because the contract is bilateral, Mr. Williams' unilateral decision to take the money out of the trust is a violation of the contract. "Louisiana Civil Code art.1983 provides in part: `Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law.'" Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 00-511, 00-898, p. 5 (La. App. 3 Cir. 12/13/00); 776 So.2d 589, 592, writ denied, (La.3/16/01); 787 So.2d 316. Because it was a violation of the contract, it was a wrongful exercise or assumption of authority over Mr. Halcomb's portion of attorney fees. When Mr. Williams deprived him of possession of the money, conversion occurred. Therefore, the trial court did not err in finding conversion occurred. Thus, we find no merit in this assignment of error.

Assignment of Error No. 4.
In his final assignment of error, Mr. Williams contends that the trial court erred in awarding the Broussard firm damages for mental anguish and inconvenience. Specifically, he contends that "[g]enerally recovery of damages for non-pecuniary losses under a contract are [sic] permitted when the contract is intended to gratify a non-pecuniary interest."
The suit filed by the Broussard firm stated a cause of action for breach of contract and conversion. The action for conversion sounds in tort and not in contract. "Traditionally, damages for conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion, as well as mental anguish and inconvenience arising from the lost use of the property." Ducote v. City of Alexandria, 95-1269, p. 6 (La.App. 3 Cir. 7/17/96); 677 So.2d 1118, 1122 (citations omitted). While the Broussard firm now has a judgment for the amount subject to the wrongful conversion, the property has yet to be returned. The trial court did not err in awarding damages for mental anguish and inconvenience. We find no merit in this final assignment of error.

DISPOSITION
For the foregoing reasons, we affirm the judgment in all respects. We tax all costs of this appeal to Moses Junior Williams.
AFFIRMED.