844 So.2d 178 (2003)
SID-MAR'S RESTAURANT & LOUNGE, INC.
v.
Judy GARDNER.
No. 02-CA-1109.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2003.
*179 Edward D. Cerrone, Eric M. Schroeder, New Orleans, LA, for Defendant/Appellant.
Keith B. Hall, Stone Pigman Walther Wittmann L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Panel composed of Judges THOMAS F. DALEY, EDWARD A. DUFRESNE, Jr., and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
Sid-Mar's Restaurant and Lounge, Inc. (Sid-Mar's) sued defendant Judy Gardner (Gardner) for enforcement of a lease. Sid-Mar's, a restaurant in the Bucktown area of Metairie, leased part of Gardner's property for extra parking spaces in April of 1993. Gardner owns the property adjacent to Sid-Mar's. Sid-Mar's sued Gardner in 2001 for enforcement of a lease provision that gave Sid-Mar's the right to additional parking spaces on defendant's property if any of the buildings on the defendant's property were torn down, removed, or destroyed. Sid-Mar's claimed that a building had been removed, but that defendant refused to allow Sid-Mar's to utilize the new space vacated by the building. *180 As a defense, Gardner argued that the lease was invalid. The trial court granted a preliminary injunction, permanent injunction, and summary judgment in favor of Sid-Mar's, finding that the lease was valid and enjoining Gardner from interfering with the exercise of the lease. Gardner appeals. We affirm the finding that the lease was valid, but reverse the trial court's finding that a structure was torn down finding that a structure was replaced that was not specifically prohibited by the lease. We reverse the trial court's grant of the permanent injunction.
Originally Gardner's parents owned the property next to and adjoining Sid-Mar's, at 1828 Orpheum Avenue in Bucktown, where they lived and also operated a wholesale seafood business called Bernice's Seafood. A wooden house is located on the lot, as well as the structure, adjoining the house, that held the seafood business. Bernice's Seafood ceased to operate sometime after 1982 when Gardner's father died. It is undisputed that the business had not been operating for a number of years when this lease was confected. Gardner's parents, and after they died, Gardner herself, allowed Sid-Mar's to use some of her vacant property for extra parking spaces for Sid-Mar's patrons, free of charge and with no formal arrangement or lease.
In 1993, Gardner and Mrs. Marian Burgess, an owner of Sid-Mar's, entered into a formal written lease for the parking spaces that Sid-Mar's had used for years without a formal lease.[1] The lease term was 50 years at a rate of $100.00 per month. The lease did not encompass Mrs. Gardner's entire property, but did provide, among other things, that the leased premises would include new space resulting from the tear down, destruction, or removal of any building on the lot.
The day after the lease was signed, Gardner wrote a letter to Mrs. Burgess, desiring to cancel the lease. Sid-Mar's refused. From 1993 until Sid-Mar's sued to enforce the lease in 2001, Gardner claimed that she occasionally approached Mrs. Burgess or her son, asking again to cancel the lease, but they always refused. It is undisputed that Sid-Mar's has paid Gardner for leasing the parking spaces since the lease was signed in April of 1993 and that Gardner has accepted the payments.
In 1998, both the house and the old seafood business building on the Gardner property were severely damaged by Hurricane Georges. At the direction of Jefferson Parish, Gardner and her son were required to remove the old building that formerly housed Bernice's, due to its structural damage. Gardner's son got a permit from Jefferson Parish to remove the old structure and to construct an open carport on the slab. When the walls and roof were removed, the slab remained. Sid-Mar's claimed the right to that portion of ground for parking spaces under the lease. When Gardner and/or her son blocked access to the area and began constructing the carport, Sid-Mar's filed a Petition for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction on February 9, 2001, to enforce the lease's provisions.
After a hearing on March 30, 2001, the trial court granted a preliminary injunction in favor of Sid-Mar's, with reasons, on April 16, 2001. Thereafter, Sid-Mar's moved for Summary Judgment, which was granted on December 31, 2001, citing the same reasons issued on April 16, 2001. This appeal followed. We affirm the finding that the lease is valid, but find that *181 because the slab was not destroyed, Sid-Mar's Restaurant has no rights under the lease to that portion of ground for additional parking spaces.
On appeal, Gardner assigns the following errors of the trial court. Her Assignments of Error, except one, attack the validity of the lease. First, she argues that she never owned or possessed any right, title, or interest in the property identified by the lease. Gardner argues that she did not legally own the property nor did she have the legal right to lease or transfer the property in question. Second, she argues that none of the elements of a valid lease are present. Third, she argues that the property encompassed under the lease is unclear.[2] Fourth, she argues that the trial court erred in finding that she did not suffer from legal duress when she signed the lease. Fifth, Gardner contends that the terms of the lease are so onerous as to constitute an involuntary act of sale, which is null under Louisiana law. Sixth, she contends that she unknowingly consented "to losing any part and parcel of the property in dispute, if and when said property is not adequately maintained." Last, appellant further claims that she has not torn down, removed, or destroyed the building on the leased property, because the slab is still intact.
ANALYSIS
We find that the lease is valid. First, Gardner argues that she never owned or possessed any right, title, or interest in the property identified by the lease. She also argues that she did not legally own the property nor did she have the legal right to lease or transfer the property in question. Second, she argues that none of the elements of a valid lease are present.
LSA-C.C. art. 2670 states:
Art. 2670. Essential elements of lease
To the contract of lease, as to that of sale, three things are absolutely necessary, to wit: the thing, the price, and the consent.
Gardner's argument here is premised on the fact that the typed language of the lease identifies the property as Square 129, Lot A, whereas in fact the leased property is Square 129, Lot B. Gardner owns Lot B, but not Lot A. Therefore, Gardner argues, the "thing" does not exist. We disagree. The map and plat that were attached to the lease and incorporated therein clearly identify the leased property as Lot B, notwithstanding the fact that the typed language of the lease mistakenly referred to it as Lot A. The address is identified in the lease as 1828 Orpheum Avenue, and this is in fact the address of the leased premises. The trial court found that it was very clear the parties contemplated the same property, and that there was a complete meeting of the minds as to the property leased. It is in fact correctly identified by the map and plat attached to and incorporated in the lease by reference. We agree with the trial court's findings.
Gardner argues that she did not legally own the property nor did she have the legal right to lease or transfer the property in question. This argument stems from the fact that Gardner inherited the property from her parents, and at the time she entered into the lease with Sid-Mar's, her parents' successions had not been opened and no Judgment of Possession existed in her favor regarding the *182 property. The trial court found this argument "unconvincing," and so does this court. The trial court found that the lease applied to property "hereafter acquired" by the lessor, and regardless, the thing leased need not be owned by the lessor, citing LSA-C.C. arts. 2681 & 2682. In addition, we note that under Louisiana law, an heir inherits ownership of property upon the decedent's death, even though the heir cannot obtain a Judgment of Possession until the completion of succession proceedings. See LSA-C.C. arts. 935 and 936. This argument has no merit.
Gardner argues that no "price" exists. She argues that the price was set at $100.00 per month for 50 years, including any future vacant property on Gardner's lot, without any further consideration to appellant. She further argues that the lease allows the Lessee to cancel at any time, without allowing the Lessor the same provision, and that this lease is in fact an "act of sale" that allows the Lessee to use Lessor's property "for all eternity." We disagree that the unilateral cancellation clause invalidates the lease. The law contains no such prohibition. It is well settled that the lease forms the law between the parties and is to be enforced by the courts. Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982). There is no prohibition in the stated law or jurisprudence against a unilateral cancellation clause.
We disagree with Gardner's interpretation that the Lease allows Sid-Mar's to use Gardner's property "for all eternity." The lease's term is clearly stated at 50 years. The lease itself provides no renewal provision. The lease clearly states in Section 8(b) that if the Lessor remains in possession of the leased premises after the expiration of the term, the occupation shall be deemed month-to-month. The Civil Code provides for termination in month-to-month leases. Gardner is also allowed to terminate the lease in the event of Sid-Mar's failure to pay the rent or violation of any other term (Section 5(a)).
Gardner argues that no consent exists, because on the day following her signature on the lease, she sent the following letter to Mrs. Burgess:
 April 27, 1993
Dear Marion,
Your family and my family have been friends for about twenty-one years. I don't want us to become enemies over this lease, but I do want to break the lease. This is my fault I should have never let you go thru [sic] with it. I am willing to pay you back what ever the amount was that the lawyer charged you. I think this is fair on my part. I also apologize for the time you have put into this lease. Also, this paying me $100 every month was originally your idea. My family never did require you to pay them a monthly fee. You have no problem with the parking now or ever had as far as I can remember. Please break the lease with me and not make this an ugly matter.
 Thank you,
 Judy
Gardner argues that this letter is evidence of lack of consent. However, she testified that she did sign the lease. This letter is evidence that Gardner changed her mind regarding the lease, not a lack of consent.
Gardner argues that she was under duress when she signed the lease. She contends that she was grieving the death of her mother,[3] was depressed, and had *183 health problems. She also testified, however, that she was in her right mind when she signed the lease, had her wits about her, and that she understood the lease and its results when she signed it. She testified at trial that she had never seen a health care professional for any symptoms of depression. Gardner claimed that she had recently lost a job and experienced economic duress. She also testified, however, that she was working a full time job at the time she signed the lease, similar to the one she had previously lost.
Economic stress and emotional stress do not constitute legal duress under Louisiana law. LSA-C.C. art.1959; Aubert v. Entergy Corp., 00-30 (La.App. 5 Cir. 5/30/00), 762 So.2d 288, 291 (financial straits); Adams v. Adams, 503 So.2d 1052, 1057 (La.App. 2 Cir.1987) (emotional strain). Though we sympathize with Mrs. Gardner on the loss of her mother, even if the evidence had showed she was suffering emotional strain and economic stress at the time she signed the lease, these do not constitute legal duress sufficient to vitiate consent to a contract.
Having found that the lease is valid, we turn to Gardner's remaining Assignment of Error. At issue is this clause found in Section 1, Leased Premises. It reads:
If the coolers, overhang and/or any of the buildings on the Lessor's Property are torn down, removed or destroyed, then the Leased Premises shall also include the property on which these improvements were formerly located.
In 1998, Hurricane Georges severely damaged the structure that formerly housed the seafood business and which had been vacant for a number of years. Jefferson Parish sued Gardner to require her to obtain a permit and make the necessary repairs to the rear porch and shed.
It is undisputed that the walls and roof of the old Bernice's Seafood building were torn down. But the slab was not torn up; it remained intact, and it was upon this part of the old structure that Gardner received a permit to erect the carport, according to the building permit. Gardner was required by the parish to get a building permit to remedy the derelict structure. Gardner's son, Keith Neidlinger, testified that he applied to the parish for the building permit and specifically asked them how he could comply with their request to remedy the derelict structure, yet not forfeit the area.[4] He was issued this particular permit that allowed him to both remove the top of the structure, but not the slab and construct the carport upon the existing slab, he said, and was in the process of doing so. We find that because the foundation remained intact, the building was not "torn down, removed or destroyed" within the meaning of the lease. Therefore, Sid-Mar's had no right under the lease to the ground still occupied by the slab foundation. We reverse the grant of summary judgment in their favor and also reverse the permanent injunction.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Mrs. Burgess testified that the area covered approximately three parking spaces.
[2] This assignment of error was not briefed and will be considered abandoned. Rule 2-12.4 of the Uniform Rules, Courts of Appeal.
[3] The record shows that Mrs. Gardner's mother died more than one year before she signed the lease.
[4] Apparently the improvements on Gardner's property sit atop a parish Sewerage & Water Board right of way.