PARRO, J.
 

 |2Pefendants, Ed.ucation Partners, Inc., Edward P. Schilleci, and Deborah H. Schil-leci, appeal the judgment of the trial court granting a partial summary judgment in favor of plaintiff, The Monterrey Center, L.L.C. (Monterrey Center). For the reasons that follow, we convert the petition for an appeal to an application for a supervisory writ, grant the writ, and remand for further proceedings.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 On November 3, 2006, the Monterrey Center filed a petition for breach of a lease agreement and for money due on the lease. Attached to the petition as exhibits were the following:
 

 1. A contract of lease for a term of 10 years between Monterrey Center, L.L.C. and Education Partners, Inc.
 

 2. A notice of default of the lease from counsel for the Monterrey Center, L.L.C. to Mr. and Mrs. Schilleci, as
 
 *227
 
 guarantors on the lease,
 
 [1]
 
 dated October 9, 2006.
 

 The Monterrey Center alleged that the 10-year lease agreement required monthly rental payments of $7,425 for the use of the premises located at 9466 Greenwell Springs Road, Baton Rouge, Louisiana. In reliance on the signed agreement, the Monterrey Center alleged that it undertook construction/renovation of the leased premises to become suitable for the business of Ed.ucation Partners.
 
 [2]
 
 Upon learning of the breach of the lease by defendants, it immediately discontinued all renovations. However, the Monterrey Center alleges that it had already paid approximately $9,000 for the renovations.
 

 The Monterrey Center alleged that defendants breached the lease agreement on July 15, 2006, without cause and/or proper notice.
 
 [3]
 
 As such, the Monterrey Center alleged that it was entitled to monthly lease payments as per the accelerated provisions of the lease agreement until the Monterrey Center found a new lessee to occupy the pleased premises. The Monterrey Center also alleged that defendants were placed In default of the lease agreement and, despite amicable demand, have failed to honor their contractual obligations.
 

 Defendants answered the petition generally denying the allegations of breach and specifically set forth the affirmative defense that their consent was obtained by duress and, as such, the lease agreement was without legal effect. Defendants asserted that they came to learn that the Monterrey Center is composed of three individuals, namely, Danny L. Young, Fred Alexander, and Elizabeth Rammer. Ms. Rammer is the sister of defendant Deborah Schilleci. Ed.ucation Partners owned property located at 5131 Government Street in Baton Rouge. The Schillecis contend that Ms. Rammer knew they were faced with meeting a huge balloon payment on the Government Street property on September 15, 2006. At the time of the execution of the lease agreement, the Schillecis had a sale pending on the Government Street property. The purchase price was to be in excess of one million dollars, which would enable them to pay off the balloon note on the property. Ms. Rammer had a previous, positive history with the prospective buyer of the Government Street property and was instrumental, to a significant degree, in making the deal.
 

 The Schillecis contend that Ms. Rammer used her influence with her sister to lure them into moving their business to rental property owned by the Monterrey Center, in essence, as pay-back for finding a buyer for the Government Street property. The Schillecis further contend that they were “shocked” and “surprised” to learn that Ms. Rammer would be their new landlord. They contend that Ms. Rammer led them to believe that the Monterrey Center was owned only by Danny L. Young. Thereafter, Mr. Schilleci contends that he asked Ms. Rammer if the lease was negotiable, and she responded that it was not. Mr. Schilleci contends that he then told her they may not sign the lease, to which she allegedly responded “[I] made the sale on
 
 *228
 
 the Government Street property and [I] can kill the sale; you will sign the lease as presented.” The Schillecis contend that they well knew that Ms. Kammer could do what she threatened to do if they did not sign the lease. The Schillecis contend that, but for such duress, they would not have signed the lease.
 

 I/The Monterrey Center filed a motion for summary judgment on the basis that defendants could not prove their affirmative defense that they were under duress at the time of the signing of the lease agreement with the Monterrey Center. Attached to the Monterrey Center’s motion for summary judgment were an affidavit by Mr. Young, an affidavit by Ms. Kammer, a letter (addressee unknown) dated May 10, 2006, purporting to reference Ed.ucation Partners’ intent to enter into a lease agreement with the Monterrey Center, the lease agreement, a commercial design plan agreement for the renovation of the leased premises, a July 11, 2006 letter written by Mr. Young to the Schil-lecis requesting amicable resolution of the matter, and a notice of eviction dated July 12, 2006 sent to Ms. Kammer by the defendants regarding property on which Ms. Kammer was living.
 

 In opposition to the motion for summary judgment, defendants attached to their memorandum an affidavit of Edward P. Schilleci, an affidavit of Deborah H. Sehil-leci, the Articles of Organization of The Monterrey Center, L.L.C., correspondence directed to the Secretary of State adding and deleting a member to the composition of the Monterrey Center, and a reported federal decision purportedly establishing Ms. Kammer’s conviction for conspiracy to defraud the federal government.
 

 After considering the “evidence”
 
 [4]
 
 presented by the parties, the court granted the motion for summary judgment and gave oral reasons for judgment, finding “that there are no genuine issues of material fact as to whether the defendants’ consent in signing the lease was vitiated by duress.... [T]he defendants have not created a genuine issue of material facts, so summary judgment is appropriate.... This is a final judgment.” The court’s comments concerning the judgment indicated that it did not believe that Ms. Kam-mer’s alleged threats, even if true, would be sufficient duress to vitiate the defendants’ consent in signing the lease. The court noted that it was unreasonable for the defendants to believe that Ms. Kam-mer had the power to stop the sale of their [¡^Government Street property. The court also believed that Ms. Kammer’s prior conviction was irrelevant. Defendants appealed, contending that the trial court erred in finding there was no genuine issue of material fact on the affirmative defense of duress in signing the lease, and that the court legally erred in ruling that even if them allegations of duress were true, said allegations would not be sufficient to vitiate their consent to the lease.
 

 SUBJECT MATTER JURISDICTION
 

 Appellate courts have the duty to examine their subject matter jurisdiction
 
 sua sponte,
 
 even when the parties do not
 
 *229
 
 raise the issue.
 
 McGehee v. City/Parish of East Baton Rouge,
 
 00-1058 (La.App. 1st Cir.9/12/01), 809 So.2d 258, 260. A final judgment is appealable in all causes in which appeals are given by law, whereas an interlocutory judgment is appealable only when expressly provided by law.
 
 See
 
 LSA-C.C.P. art.2083. A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. However, a judgment that determines the merits in whole or in part is a final judgment. LSA-C.C.P. art. 1841.
 

 Another panel of this court dismissed a previously-filed appeal in this matter, noting that the judgment appealed from appeared to be a non-appealable partial summary judgment. Thereafter, the district court signed an amended and supplemental judgment, designating the judgment as final and appealable, without stating the basis for its determination that there was no just reason for delay. That determination and designation does not settle the matter. Upon our
 
 de novo
 
 review, we conclude that the partial summary judgment, rejecting defendants’ affirmative defense of duress, does not constitute a final judgment for the purpose of an | (¡immediate appeal.
 
 [5]
 

 Nevertheless, LSA-Const. art. V, § 10(A) provides that a court of appeal has “supervisory jurisdiction over cases which arise within its circuit.” Thus, we convert this petition for an appeal to a writ application and consider the issue raised in this matter.
 
 See First National Bank of Picayune v. Pearl River Fabricators, Inc.,
 
 06-2195 (La.11/16/07), 971 So.2d 302, 310.
 

 APPLICABLE PROCEDURAL LAW
 

 Summary judgments are reviewed on appeal
 
 de novo,
 
 with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate.
 
 Smith v. Our Lady of the Lake Hospital, Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact.
 
 Jarrell v. Carter,
 
 632 So.2d 321, 323 (La.App. 1st Cir.1993),
 
 writ denied,
 
 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy,
 
 *230
 
 and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2);
 
 Rombo v. Walker,
 
 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
 

 |7The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party’s burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2);
 
 Clark v. Favalora,
 
 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673.
 

 DISCUSSION
 

 Louisiana Civil Code article 2668 provides as follows:
 

 Lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay.
 

 The consent of the parties as to the thing and the rent is essential but not necessarily sufficient for a contract of lease.
 

 The essential elements of the lease are the thing, the price (rent), and the consent of the parties.
 
 See Daigle v. Vanderpool,
 
 02-2005 (La.App. 1st Cir.6/27/03), 858 So.2d 552, 555;
 
 Southern Treats, Inc. v. Titan Properties, L.L.C.,
 
 40,873 (La.App. 2nd Cir.4/19/06), 927 So.2d 677, 683,
 
 writ denied,
 
 06-1170 (La.9/15/06), 936 So.2d 1271. Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party’s person, property, or reputation. LSA-C.C. art.1959;
 
 Wolf v. Louisiana State Racing Commission,
 
 545 So.2d 976, 980 (La.1989);
 
 Grezaffi v. Smith,
 
 93-1696 (La. App. 1st Cir.6/24/94), 641 So.2d 210, 213. One form of duress results when a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent. The result of this type of duress is that the contract that is created is voidable by the victim. LSA-C.C. art.1959, Revision Comments — 1984, comment (b);
 
 Wolf,
 
 545 So.2d at 980.
 

 Louisiana Civil Code article 1959 further provides that age, health, disposition, and other personal circumstances of a party must be taken into account in determining the reasonableness of the fear. LSA-C.C. art.1959;
 
 Grezaffi,
 
 641 So.2d at 213-14. Thus, Article 1959 sets forth a subjective as well as an objective standard for evaluating | Ra claim of duress.
 
 Dornier v. Live Oak Arabians, Inc.,
 
 602 So.2d 743, 748 (La.App. 1st Cir.),
 
 writ denied,
 
 608 So.2d 177 (La.1992);
 
 Eymard v. Terrebonne,
 
 560 So.2d 887, 890 (La.App. 1st Cir.),
 
 writ denied,
 
 567 So.2d 614 (La.1990). Duress is to be considered in light of subjective characteristics of the person whose consent is in question; however, Article 1959 also provides that the duress must be of such a nature as to cause a “reasonable fear” of unjust and considerable injury to a party’s property in order to constitute legal duress.
 
 See Eymard,
 
 560 So.2d at 890;
 
 Dornier,
 
 602 So.2d at 748.
 

 
 *231
 
 Some Louisiana courts have held that economic stress does not constitute legal duress as contemplated by Article 1959. However, the supreme court has held that the fear of economic deprivation can constitute duress that vitiates consent.
 
 Wolf,
 
 545 So.2d at 981;
 
 see also Martco Partnership v. Frazier,
 
 01-72 (La.App. 3rd Cir.6/6/01), 787 So.2d 1196, 1199.
 
 [6]
 

 As the movant for summary judgment, the Monterrey Center had the initial burden of proof pursuant to LSA-C.C.P. art. 966(C)(2). However the Monterrey Center would not bear the burden of proof at trial on the issue of defendants’ affirmative defense of duress; therefore, it was only required to point out to the trial court that there was an absence of factual support essential to defendants’ defense. The Monterrey Center attempted to do this by offering the affidavits of Mr. Young and Ms. Kammer. Mr. Young attested that at no time during the lease negotiations did he “exercise duress” towards the Schillec-is. According to Mr. Young, the Schillecis signed |flthe lease of their own free will. However, there is no indication that he was present when the Schillecis signed the lease and, in fact, Ms. Kammer attested that it was she who accompanied the Schil-lecis to a notary for purposes of executing the lease.
 

 Ms. Kammer attested that she “recommended” to the Schillecis that they sell their Government Street property in light of their financial difficulties. Ms. Kammer also “recommended” to the Schillecis that they lease property for Ed.ucation Partners to operate. According to Ms. Kam-mer, she was given permission to locate suitable premises for Ed.ucation Partners to lease and permission to locate a purchaser for the Government Street property. Ms. Kammer attested that she in fact found a suitable location for Ed.ucation Partners to lease, i.e., 9466 Greenwell Springs Road, Baton Rouge, which was the property owned by the Monterrey Center. Ms. Kammer attested that she accompanied the Schillecis to a notary of their choice for purposes of signing the lease and that she did not at that time, or any other time, make threats of cancelling the closing on the Government Street property-
 

 In opposition to the motion for summary judgment, defendants attack the affidavit
 
 *232
 
 of Mr. Young as adding nothing to the central issue before the court on the basis that defendants have never claimed that Mr. Young caused the duress in this case. Defendants claim that Mr. Young’s affidavit has no bearing on whether Ms. Ram-mer caused duress.
 

 In addition, both Edward and Deborah Schilleci offered their respective affidavits. Both contend that in the spring of 2006, they were operating their beauty school, which is operated under the legal entity of Ed.ucation Partners, on Government Street in Baton Rouge. Ms. Rammer, Mrs. Schilleci’s sister, was living on property they owned, rent free. As such, the Schillecis attested that Ms. Rammer was aware that they desired to sell their Government Street property, because they were faced with a huge balloon payment due in September of 2006. Mr. Young made an offer on the property, which they rejected as insufficient. Ms. Rammer was instrumental in getting other prospective buyers interested in the property, and ultimately played a key role in locating a purchaser for it. Each of the Schillecis attested that at the time of the negotiation of the purchase agreement, Ms. Rammer continuously sought to get them interested in 110moving their beauty school to the Monterrey Center. The Schillecis attested that they did not know and could not believe that Ms. Rammer was a member of the Monterrey Center until they saw the documents from the Secretary of State’s office. Essentially, the Schillecis attested that they had no choice but to sign the lease as presented or risk losing the sale of their Government Street property.
 

 A trial court cannot make credibility decisions on a motion for summary judgment.
 
 Hutchinson v. Knights of Columbus, Council No. 5747,
 
 03-1533 (La.2/20/04), 866 So.2d 228, 234;
 
 see Boland v. West Feliciana Parish Police Jury,
 
 03-1297 (La.App. 1st Cir.6/25/04), 878 So.2d 808, 813,
 
 writ denied,
 
 04-2286 (La.11/24/04), 888 So.2d 231. In deciding a motion for summary judgment, the court must assume that all of the witnesses are credible.
 
 Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 236. Furthermore, summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice and should only be granted on such subjective issues when no genuine issue of material fact exists concerning that issue.
 
 See Rager v. Bourgeois,
 
 06-0322 (La.App. 1st Cir.12/28/06), 951 So.2d 330, 333,
 
 writ denied,
 
 07-0189 (La.3/23/07), 951 So.2d 1105.
 

 Based on our
 
 de novo
 
 review of the evidence, we conclude that a genuine issue of material fact remains as to whether the Schillecis were subjected to duress sufficient to vitiate their consent to the lease. We base this conclusion on the conflicting affidavits offered by the parties and on the absence of competent summary judgment evidence establishing “facts” relied on by the parties.
 
 [7]
 
 On the record before us, we are unable to discern whether the threats and the fear were legitimate or merely an attempt by defendants to extricate themselves from a bad deal.
 

 
 *233
 

 CONCLUSION
 

 The trial court erred in granting summary judgment because doing so required | nthe court to decide disputed genuine issues of material fact and to make credibility determinations. Accordingly, we convert the petition for an appeal to an application for a supervisory writ, grant the writ, reverse the trial court’s judgment, and remand for further proceedings. All costs of this matter are assessed to The Monterrey Center, L.L.C.
 

 PETITION FOR APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; JUDGMENT REVERSED; AND REMANDED.
 

 McCLENDON, J. Concurs and Assigns Reasons.
 

 McCLENDON, J., concurs.
 

 | -¡Based on the insufficiency of the record, I concur.
 

 [1]
 

 . The Schillecis are the officers and directors of Ed.ucation Partners, Inc. For ease of reference, the Schillecis and Ed.ucation Partners, Inc., cumulatively, are referred to as defendants.
 

 [2]
 

 . Ed.ucation Partners does business as D'Jay's School of Beauty.
 

 [3]
 

 .The petition alleges that defendants verbally communicated to Danny Young, a principal of the Monterrey Center, their intent to breach the lease agreement.
 

 [4]
 

 . We note that both parties simply attached several exhibits to their memorandum in support of summary judgment. However, a document that is not an affidavit or sworn to in any way or is not certified or attached to an affidavit is not of sufficient evidentiary quality on summaiy judgment to be given weight in determining whether or not there remain genuine issues of material fact.
 
 Robertson v. Northshore Regional Medical Center,
 
 97-2068 (La.App. 1st Cir.9/25/98), 723 So.2d 460, 464. As such, it appears the only competent evidence submitted in support of and in opposition to the motion are the affidavits offered by both parties.
 
 See Aydell v. Sterns,
 
 98-3135 (La.2/26/99), 731 So.2d 189.
 

 [5]
 

 . The judgment at issue is not a final partial judgment immediately appealable under LSA-C.C.P. art. 1915(A). LSA-C.C.P. art. 1915(A)(3) provides that a grant of summary judgment pursuant to Article 966(E) shall not constitute a final judgment for purposes of an immediate appeal, even though Article 966(E) authorizes a summary judgment that is dis-positive of a particular
 
 defense.
 
 And, despite the contentions of the parties, the judgment is not one on liability. Although, as a practical matter, the district court's ruling dismissing the affirmative defense of duress essentially determines the outcome of the case, there is no judgment granting the Monterrey Center’s
 
 claims.
 
 Moreover, LSA-C.C.P. art. 1915(A)(5) provides that a court may sign a judgment on liability only where the issue has been "tried separately by the court,” and there was no trial or motion for summary judgment on the issue of liability in this case.
 

 The judgment is also not subject to being designated as a final judgment under Article 1915(B). LSA-C.C.P. art. 1915(B)(1) provides: "When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in the original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.” The affirmative defense of duress was presented in an answer and not "in the original demand, re-conventional demand, cross-claim, third party claim, or intervention.” Therefore, Article 1915(B)(1) does not provide the authority for the court to designate such an interlocutory judgment as final.
 

 [6]
 

 .
 
 Plaintiff relies on
 
 Sid-Mar's Restaurant & Lounge, Inc. v. Gardner,
 
 02-1109 (La.App. 5th Cir.3/25/03), 844 So.2d 178, in support of its position that economic stress and emotional stress do not constitute legal duress sufficient to vitiate consent to a lease. However, we note that the fifth circuit’s holding in
 
 Sid-Mar's
 
 is inconsistent with its opinion in
 
 Standard Coffee Service Company v. Babin,
 
 472 So.2d 124, 127 (La.App. 5th Cir.1985), where the fifth circuit affirmed the trial court’s ruling concluding that an employment contract was adhesive in nature and that the defendant felt coerced, by threat of economic vulnerability, into signing the contract. The fifth circuit stated "Babin was faced with being deprived of his economic security, although a healthy male and able to earn a living. He was in a vulnerable position: either sign or be fired." This court, in
 
 Averette v. Industrial Concepts, Inc.,
 
 95-1286 (La.App. 1st Cir.4/30/96), 673 So.2d 642,
 
 writ denied,
 
 96-1510 (La.9/20/96), 679 So.2d 442, did not preclude the possibility that economic duress may constitute legal duress, but ultimately affirmed the trial court’s ruling that although the plaintiffs suffered economic duress, after evaluating the credibility of the witnesses and the circumstances, determined the economic duress was not produced by improper threats and therefore did not constitute legal duress. Accordingly, this court affirmed the trial court ruling based on the discretion afforded the trial court on matters of credibility as the trial court had the opportunity to evaluate the witnesses and to assess the circumstances. This court also deemed significant the fact that plaintiffs had the benefit of counsel and, therefore, ample opportunity to review the contract at issue and investigate possible alternatives.
 

 [7]
 

 . We note, for example, that no evidence of the purchase agreement on the Government Street property has been offered by either party, even though said agreement is pivotal to the position of both parties. Moreover, in brief, plaintiff argues that defendants did not fear Ms. Kammer, because if they did, they would not have antagonized her by evicting her from property they owned prior to the sale of their Government Street property. However, as noted previously in this opinion, this court may not properly consider documents that are not sworn to in any way or identified and referenced by affidavit.