STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0852

STEPHEN E. BROYLES, JR.

VERSUS

JEREMY DUCOTE AND RITHM SOLUTIONS GROUP, LLC

DATE OF JUDGMENT: JUN 1 4 2022

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 683585, SECTION 24, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE DONALD R. JOHNSON, JUDGE

* * * * * *

| | |
|---|---|
| David S. Rubin<br>Baton Rouge, Louisiana | Counsel for Plaintiff-Appellee<br>Stephen E. Broyles, Jr. |
| Valerie Briggs Bargas<br>Kolby P. Marchand<br>Baton Rouge, Louisiana | Counsel for Defendants-Appellants<br>Jeremy Ducote and Rithm Solutions,<br>LLC |

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: AFFIRMED.

Holdridge J. agrees in part & dissents in part for reasons assigned.

**CHUTZ, J.**

Defendants-appellants, Rithm Solutions Group, LLC (Rithm) and Jeremy Ducote, appeal the trial court's grant of summary judgment in favor of plaintiff-appellee, Stephen E. Broyles, Jr., awarding him relief pursuant to a written contract. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 22, 2014, Rithm, represented by Ducote, entered into a Strategic Alliance Agreement (SAA) with Ikon Construction, LLC (Ikon), represented by Broyles. Rithm developed and distributed software solutions for the construction industry and Ikon was a commercial contract specialist. The parties joined in the SAA with each agreeing to support "the development and sales of a mobile business intelligence software product called ENGUAGE MOBILE and another software product called FEE CURVE." According to the terms of the SAA, in exchange for a $45,000 investment, Rithm was granted 51% "ownership rights and interest in any trademarks, copyrights, patents, confidential information or other intellectual property" (IP) of new and original software. And Ikon was granted 49% of those same rights of new and original software also in exchange for $45,000. It is undisputed that on December 10, 2014, MomentumBI, LLC (MBI) was formed for the purpose of development of new and original software with 51% interest granted to Ducote and 49% interest to Broyles.

On July 25, 2018, Ikon, Broyles, Rithm, Ducote, and MBI entered into an agreement entitled "INTELLECTUAL PROPERTY ASSIGNMENT, ROYALTY, SECURITY AND RELEASE AGREEMENT" (the IPA) pursuant to which Ikon, Broyles, and MBI sold and transferred their interests in the IP of new and original software to Rithm, and Rithm agreed to pay Broyles $100,000. The IPA set forth

2

the rate of interest as well as a payment schedule. The agreement also included a royalty in favor of Broyles and a surety guarantee by Ducote for Rithm's obligations. Additionally in accordance with the terms of the IPA, Rithm agreed to and, also on July 25, 2018, executed three ancillary agreements: Exhibit A, a promissory note in the amount of $100,000; Exhibit B, a pledge and security interest in favor of Broyles by Ducote in and to 49% of the total membership interests of Rithm; and Exhibit C, and Exhibit C, a first priority security interest in favor of Broyles by Rithm (collectively the ancillary agreements).

When Rithm failed to comply with the terms of the IPA, Broyles filed this lawsuit on May 29, 2019, seeking judgment against Rithm and Ducote in accordance with the terms of the IPA and Exhibit A. He also sought recognition, maintenance, and enforcement of his security interest in the membership interests as set forth in Exhibits B and C. Rithm and Ducote answered the suit, generally denying Broyle's allegations, and in particular "that the basis for the [IPA] was original [IP], thereby, rendering this alleged assignment a nullity." In their answer, they averred that "the consideration for said agreement was an object that was not original work/IP capable of being transferred." They also claimed that Broyles had no right to the royalty set forth in the IPA since the business had not been successful and there were no profits to share.

On July 24, 2020, Broyles filed a motion for summary judgment, contending that he was entitled to a judgment in accordance with the terms of the IPA and the ancillary agreements. After a hearing on September 1, 2020, the trial court ruled in favor of Broyles and, thereafter, rendered a judgment, awarding Broyles $122,084.37, recognizing his 49% security interest in the membership interests in Rithm, entering judgment in his favor for a 9% royalty of Rithm's total gross

3

revenues not to exceed $900,000, and granting attorney fees of $2,500.[1] A motion for new trial filed by Rithm and Ducote was subsequently denied. Rithm and Ducote devolutively appealed both the summary judgment and the denial of their motion for new trial.

## DISCUSSION

**Summary Judgment:**

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. *Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge*, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194. The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. See La. C.C.P. art. 966D(1). The mover can meet his burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with his motion for summary judgment. La. C.C.P. art. 966A(4).

Once the mover properly establishes by his supporting documents that there are no genuine issues of material facts, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses if he will not bear the burden of proof at trial. La. C.C.P. art. 966D(1). The moving party must

---

[1] On November 19, 2020, the trial court signed a judgment, setting forth, among other things, Broyles's entitlement to relief for a royalty in accordance with the terms of the IPA, which stated, in pertinent part, that judgment was "entered herein in favor [Broyles] and against [Rithm] for 9% of the total gross revenue of [Rithm] from July 25, 2018 and thereafter but not to exceed $900,000." Noting that a money judgment which does not award a certain and definite amount of damages, but instead awards a sum that contains a future contingency, has yet to be calculated, or that must be determined by an extrinsic source is not a final judgment, see *Aurora Loan Services LLC v. Glass*, 2017-1760 (La. App. 1st Cir. 12/6/18), 2018 WL 6381915, *2-3 (unpublished), on March 24, 2022, this court issued an interim order seeking clarification as to the finality of the judgment. On April 19, 2022, the trial court signed an amended judgment designating the judgment as final for purposes of an immediate appeal. We find no abuse of discretion in the trial court's designation. See *R.J. Messinger, Inc. v. Rosenblum*, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122-23. And because this court's rule to show cause has been satisfied by the amended judgment, the appeal is maintained and we review the propriety of the trial court's rulings in the amended judgment.

4

only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966D(1).

The burden then shifts to the non-moving parties to produce factual support, through the use of proper documentary evidence attached to their opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1). If the non-moving parties fail to produce sufficient factual support in their opposition to prove the existence of a genuine issue of material fact, Article 966D(1) mandates the granting of the motion for summary judgment. See *Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. *Collins v. Franciscan Missionaries of Our Lady Health Sys., Inc.*, 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So.3d 191, 194-95, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773.

In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Jackson v. Wise*, 2017-1062 (La. App. 1st Cir. 4/13/18), 249 So.3d 845, 850, writ denied, 2018-0785 (La. 9/21/18), 252 So.3d 914. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Dyess v. American Nat'l Prop. and Cas. Co.*, 2003-1971 (La. App. 1st Cir. 6/25/04), 886 So.2d 448, 451, writ denied, 2004-1858 (La. 10/29/04), 885 So.2d 592.

**The Contract:**

The requirements for a valid contract are: (1) capacity; (2) a lawful cause;

(3) consent; and (4) a valid object. *Hoskins v. State Through Div. of Admin., Office of Cmty. Dev.*, 2018-1089 (La. App. 1st Cir. 2/25/19), 273 So.3d 323, 328. See La. C.C. arts. 1918, 1927, 1966, 1971. Broyles had the initial burden of proving the existence of the contract and its terms. See La. C.C. art. 1831; *Hoskins*, 273 So.3d at 328.

In support of summary judgment, Broyles introduced numerous documents including the SAA, the IPA and the ancillary agreements, Louisiana Secretary of State documents showing the formation of MBI on December 10, 2014, emails between Ducote and Broyles, which included copies of images purporting to represent the proposed new and original software in development, and Broyles's affidavit. Relative to the sale of the IP from Broyles, Ikon, and MBI to Rithm, the IPA, executed on July 25, 2018, stated the following seminal provisions:

> 1.1 Assignment of [IP]. Each of [MBI], Ikon and Broyles hereby sells, assigns, transfers, conveys and delivers to [Rithm], and [Rithm] hereby purchases and accepts from each [MBI], Ikon and Broyles, all of its right, title and interest in and to the [IP], if any.

> 1.2 Base consideration. In consideration of [MBI's, Ikon's, and Broyles's] sale, assignment, transfer, conveyance and delivery to [Rithm] of whatever right, title and interest, if any, [they have] in and to the [IP], [Rithm] hereby agrees to pay Broyles, in immediately available funds, $100,000 (the "**Base Consideration**"), which Base Consideration shall be payable as follows: (i) $25,000 is to be paid by [Rithm] to Broyles on November 1, 2018, and (ii) the remaining balance of the Base Consideration, including simple interest at a rate of [6%] per annum from the date hereof until paid in full, shall be paid in [6] consecutive, equal installments ... in each case in accordance with the terms of that certain Promissory Note of [Rithm] in the form of **Exhibit A**, which is being executed and delivered by [Rithm] to Broyles contemporaneously herewith (the "**Note**").

Additionally, emails dated January 8, 2019 and January 11, 2019, established that Ducote tendered $1,000 to Broyles in payment of the IPA. With

this showing, Broyles maintained he established entitlement to a money judgment in the amount of $122,084.37 in conformity with the terms of the IPA.[2]

**The Lack of Object and Lawful Cause Defense:**

Without challenging the showing made by Broyles and acknowledging that the IPA and the ancillary contracts were duly executed, Rithm and Ducote assert the agreements are nevertheless invalid. They first assert that the IPA and the ancillary agreements lacked an object and suggest that without an object, there was no lawful cause to support the contracts.

According to La. C.C. art. 1971, parties are free to contract for any object that is lawful, possible, and determined or determinable. A contractual object is possible or impossible according to its own nature and not according to the parties' ability to perform. La. C.C. art. 1972. The object of a contract must be determined at least as to its kind. La. C.C. art. 1973. Moreover, an obligation cannot exist without a lawful cause. La. C.C. art. 1966. Cause is the reason why a party obligates himself. La. C.C. art. 1967.

In his affidavit submitted in opposition to the motion for summary judgment, Ducote attested that the new and original software applications the parties intended to develop pursuant to the SAA involved various coding and "software development that would be added to an already existing platform, such as Microsoft Excel, Visual Studio, SQL Server, and Microsoft SQL Server, by purchasing that product and building additional components that would work off those existing platforms." Ducote believed his technical background put him in a better position than Broyles "to discuss the existence and/or technical aspects of what, if anything, was developed by [MBI], which was nothing." Ducote did not

---

[2] Under the terms of the promissory note (Exhibit A), if a payment default occurred, "interest shall thereafter accrue on the outstanding principal balance hereunder at the rate of [12%] per annum until paid in full." It is undisputed that the sum awarded consisted of $99,000 in principal and $23,084.37 in interest at the rate of 6% through November 1, 2018 and 12% through the date of the award.

dispute that he had sent images in emails to Broyles. He described the images as charts, graphs, dashboards, logos, and other items but stated that they were not new and original software as a result of coding and/or development that could be attached to a platform such as Microsoft Excel as contemplated by the SAA. He further explained that the images were "merely ... examples of what the [s]oftware and application could look like upon the finalization of development."

According to Ducote, MBI had access to "various templates," which were beneficial to clients. The templates were owned by third-party companies. It was the sales of these templates that supported MBI's revenue of $79,700 in three years. In an effort to develop the new and original software contemplated in the SAA, Ducote suggested that MBI pay Rithm to develop it until a third-party developer could be hired. But ultimately MBI's sales were insufficient to support payment to Rithm or any of the third-party developers, whose estimates were in excess of $200,000.

Based on Ducote's attestations that no new and original software had been developed before the parties executed the IPA, Rithm and Ducote maintain that the IPA and the ancillary agreements lacked a valid object. As such, they reason there was no lawful cause for the parties' agreements and apparently seek to rescind the agreements. Alternatively, they urge an outstanding issue of material fact as to whether an object existed to support the IPA and the ancillary agreements precludes summary judgment.

The plain language of the IPA demonstrates that the parties' agreement was a sale from Broyles to Rithm with a guarantee of Rithm's performance by Ducote. Thus, we must determine whether the object of the sale was valid.

A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. La. C.C. art. 2439. All things corporeal or incorporeal, susceptible of ownership, may be the object of a contract of sale,

8

unless the sale of a particular thing is prohibited by law. La. C.C. art. 2448. A hope may be the object of a contract of sale. Thus, a fisherman may sell a haul of his net before he throws it. In that case the buyer is entitled to whatever is caught in the net, according to the parties' expectations, and even if nothing is caught the sale is valid. La. C.C. art. 2451.

Despite Ducote's representations that the IP contemplated in the SAA was never developed, it is evident by the language of the IPA that the object was the sale of the hope of the development of new and original software applications for use in the construction industry. As set forth in the paragraph entitled "Assignment of [IP]," Broyles (individually and on behalf of Ikon and MBI) sold, assigned, transferred, conveyed, and delivered to Rithm all right, title, and interest in and to the IP, *if any*. This language clearly evinces the sale of a hope in the development of the IP, which is an object capable of sale. Thus, based on the unambiguous language of the IPA, the trial court correctly concluded that no outstanding issues of material fact remained. As such, Rithm and Ducote's suggestion that the IPA and ancillary agreements lacked a lawful cause due to an invalid object is without merit.

**The Duress Defense:**

Rithm and Ducote next contend that the IPA and the ancillary agreements are unenforceable because their consent was vitiated. They claim that in both his representative capacity as the sole member/manager for Rithm and in his individual capacity, Ducote's consent was obtained by duress.

A contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining

9

reasonableness of the fear. La. C.C. art. 1959. Duress may be considered to encompass economic duress to property and reputation for some purposes. See Dian Tooley-Knoblett and David Gruning, 24 *La. Civ. L. Treatise*, Sales § 7:8 (2021).[3] A threat of doing a lawful act or a threat of exercising a right does not constitute duress. La. C.C. art. 1962.

Duress is to be considered in light of the subjective characteristics of the person whose consent is in question; however, Article 1959 also provides that the duress must be of such a nature as to cause a "reasonable fear" of unjust and considerable injury to a party's property or reputation in order to constitute legal duress. See *Monterrey Ctr., LLC v. Education Partners, Inc.*, 2008-0734 (La. App. 1st Cir. 12/23/08), 5 So.3d 225, 230. Although a trial court cannot make credibility decisions on a motion for summary judgment and summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice, it is appropriate to grant summary judgment on such subjective issues when no genuine issue of material fact exists concerning that issue. *Id.*, 5 So.3d at 232.

In his affidavit, Ducote attested to the following. In January 2016, he witnessed his father's suicide. Due to the degradation of his mental state, Ducote began therapy. Within a year, he started downsizing Rithm because it lacked

---

[3] Economic duress occurs in the particular way in which an economic interest is threatened since economic integrity is an interest threatened more or less constantly by any player at any level in a market economy. An archetypical example of such duress is where one engaged in an enterprise of constructing an ocean-going vessel makes hundreds of contracts with numerous third parties to supply components of the vessel. All suppliers make their offers and set their prices at the beginning of the process when no single supplier is crucial. At the end of the process, the supplier of the final, key component threatens not to perform unless his price is tripled for no other reason than that his performance is vastly more valuable at this moment than it was at the outset. If the vessel constructor meets the demand by paying triple the originally-set amount, and the vessel is, thereby, completed, the supplier would not be permitted to retain his excess price based on a finding of economic duress. Although Louisiana jurisprudence has reached the stage of considering claims of economic duress, it has not yet ruled in favor of one making such a claim. See 24 *La. Civ. L. Treatise*, Sales § 7:8. But see *Standard Coffee Service Co. v. Babin*, 472 So.2d 124, 127 (La. App. 5th Cir. 1985) (affirming the trial court's conclusion that an employment contract was adhesive in nature and that the defendant felt coerced, by threat of economic vulnerability, into signing the contract, as noted by this court in *Monterrey Ctr., LLC*, 5 So.3d at 231 n.6).

10

sufficient business to support itself. In an effort to save Rithm, Ducote attempted to consolidate his businesses including MBI. As his businesses began to fail, Ducote's mental faculties continued to decline. And he discontinued therapy once he lacked resources to pay for it.

Without setting forth a date and characterizing Broyles as having undertaken "an aggressive campaign to recoup his initial investment in [MBI]," Ducote attested that Broyles showed up at Rithm unannounced on "at least" two occasions. Ducote recalled that Broyles questioned Rithm employees on one occasion; on another, he "question[ed], accus[ed], and threaten[ed] [Ducote] with litigation." According to Ducote, he "knew Broyles was a powerful businessman in this area" and Broyles's two visits to Rithm put Ducote "in further distress and had [Ducote] fearful of what [might] happen." As a result of "[t]he pressure of the situation Broyles was putting on [him]," Ducote began contemplating suicide.

An email sent on December 10, 2018, attached to Broyles's motion for summary judgment, included statements from Ducote to Broyles suggesting that he could pay the debt he owed to Broyles by taking his own life and indicated that Broyles had a right to a portion of the insurance proceeds which was the only asset he had. Broyles's email response included an offer of a referral to a therapist who could assist Ducote if he was suicidal.

A careful review of the actions that Ducote attributed to Broyles in support of the duress defense show only that on unspecified dates Broyles went by the Rithm office twice and threatened to file a lawsuit, i.e., Broyles threatened to undertake a lawful act and exercise a legal right. The record is devoid of any evidence showing that the threat to file a lawsuit preceded the execution of the IPA and the ancillary agreements. And the email chain, which showed Ducote's contemplation of suicide, was dated December 10, 2018, months *after* the parties entered into the July 25, 2018 IPA and the ancillary agreements.

11

In his affidavit, Ducote identified no other words or threats to him or Rithm by Broyles. And while Ducote stressed the disparity in the business acumen of the two men, he never pointed to either an actual or implied threat by Broyles to harm the property or reputation of either Rithm or Ducote aside from the threat of litigation, a threat that cannot constitute duress. Ducote's fear, without evidence of either a temporal connexity to the date of the execution of the IPA and the ancillary agreements or an articulation of an actual threat of harm, is simply insufficient to support a finding by the trier of fact that the IPA and the ancillary agreements were executed by Rithm under duress. As such, Rithm and Ducote cannot establish that Broyles caused a "reasonable fear" of unjust and considerable injury to the reputation of Rithm and/or Ducote so as to constitute legal duress. Therefore, lacking a genuine issue of material fact, the trial court did not err in dismissing Rithm's and Ducote's duress defense as insufficient factually or legally to preclude summary judgment.[4]

**The Error Defense:**

Rithm and Ducote also maintain that consent was vitiated by error. They assert that since Broyles believed new and original software had been produced by MBI as contemplated by the SAA, but Ducote attested that no new and original

---

[4] In his reply memorandum, Broyles levied a limited objection to Ducote's affidavit attached to Rithm's and Ducote's opposition memorandum. The gist of Broyles's complaint was that Rithm and Ducote failed to affirmatively plead the duress defense in their answer. See La. C.C.P. art. 1005 ("The answer shall set forth affirmatively ... duress, error or mistake."). Thus, Broyles asserted that the attempt to raise duress through Ducote's attestations was an enlargement of the pleadings to which he objected. See La. C.C.P. art. 1154 ("If evidence is objected to ... on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits."). Without having requested an amendment of their pleadings, Rithm and Ducote suggest the trial court erred because it failed to rule on Broyles's limited objection. See La. C.C.P. art. 966D(2) ("The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider."). Although the trial court's failure to specifically hold an affidavit is inadmissible requires that we considered it in our de novo review, see *Bates v. Progressive Tractor & Implement Co., LLC*, 2021-0338 (La. App. 1st Cir. 12/22/21), writ not considered, 2022-00184 (La. 3/22/22), 334 So. 3d 754, we find Ducote's attestations are insufficient to warrant a reversal of the grant of summary judgment.

12

software had been produced, an outstanding issue of fact exists as to whether the parties' consent was vitiated by error.

Consent may be vitiated by error. La. C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949; *Peironnet v. Matador Resources Co.*, 2012-2292 (La. 6/28/13), 144 So.3d 791, 807. When only one party is in error, that is, when the error is unilateral, there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error. Louisiana courts have often refused relief for unilateral error for this reason unless the unilateral error was known or should have been known to the other party as the reason or principal cause why the party in error made the contract. *Peironnet*, 144 So.3d at 807-08.

Here, on behalf of Rithm as its sole member/manager, Ducote was aware when he signed the IPA and the ancillary agreements that the new and original software contemplated by the SAA did not exist. Nevertheless, he signed the contract in which he agreed on behalf of Rithm to purchase from Broyles (individually and on behalf of Ikon and MBI) all right, title and interest in and to the IP, if any. Thus, the party who potentially was in error and subject to unjust injury was *Broyles*, not Rithm and Ducote. Broyles does not assert an error. Indeed, since the IPA specifically provided for the sale of the hope of the development of new and original software through inclusion of the term "if any" in setting forth the object, there was no error and a sufficient cause existed to support the parties' consent to the terms of the IPA. Accordingly, the trial court correctly dismissed Rithm's and Ducote's error defense and granted summary judgment.

Broyles demonstrated by the attachments to his motion for summary judgment that he was entitled to a money judgment in the amount of $122,084.37

13

under the terms of the IPA and the ancillary agreements. Because Rithm and Ducote failed to offer sufficient evidence to support their defenses of lack of object, duress, and error, the trial court correctly granted summary judgment on this basis. We turn now to Broyles's entitlement to summary judgment on the issue of royalty relief under the terms of the IPA.

**The Royalty Provision:**

In section 1.3(a), entitled "Contingent Consideration," the IPA sets forth the following:

> In consideration of [MBI's, Ikon's, and Broyles's] sale, assignment, transfer, conveyance and delivery to [Rithm] of whatever right, title and interest, if any, it has in and to the [IP], [Rithm] hereby agrees that, in addition to the Base Consideration, Broyles shall be entitled to receive from [Rithm], on a quarterly basis ... a royalty payment ... equal to [9%] of the Total Revenue of [Rithm] ... provided, however, [Rithm's] maximum aggregate Royalty Payment obligation pursuant to this Section 1.3(a) ... shall not exceed $900,000.

Rithm and Ducote contend that the trial court erred in awarding "9% of Rithm's gross revenue from July 25, 2018, not to exceed [$900,000], but [Broyles] put on no evidence of any revenue of Rithm during this time." Thus, Rithm and Ducote contend the award of royalty relief is unsupported by the evidence.

Courts may declare rights, status, and other legal relations. The declaration shall have the force and effect of a final judgment or decree. La. C.C.P. art. 1871. See also La. C.C.P. art. 1873 ("A contract may be construed either before or after there has been a breach thereof."). The function of a declaratory judgment is simply to establish the rights of parties or to express the opinion of the court on a question of law without ordering anything to be done. The distinctive characteristic of a declaratory judgment is that the declaration stands by itself with no executory process following as a matter of course, so that it is distinguished from a direct action in that it does not seek execution or performance from the defendant or the

14

opposing litigants. *Mull & Mull v. Kozak*, 2003-0668 (La. App. 1st Cir. 6/25/04), 878 So.2d 843, 846, <u>writ denied</u>, 2004-2332 (La. 12/17/04), 888 So.2d 866.

A review of the pleadings shows that although Broyles prayed for "such amounts ... as may be owed and owing in [the] future," and "for such other and further relief as allowed by law" in his original and amended petition, he did not specifically request declaratory relief. In his motion for summary judgment, however, Broyles sought to have his "rights under the agreement signed between the parties recognized, maintained, and enforced."

Although Broyles did not request declaratory relief in his initial pleadings, he clearly placed the issue before the parties in his motion for summary judgment pleading. Rithm and Ducote did not specifically object to the inclusion of this issue in their opposition memorandum. Thus, the pleadings were "expanded" when evidence on the issue of Broyles' entitlement to a declaration recognizing a royalty in his favor in accordance with Section 1.3(a) was presented without objection, and that issue "shall be treated in all respects as if [it] had been raised by the pleading." <u>See</u> La. C.C.P. art. 1154; *Carraway v. Carraway*, 2020-1309 (La. App. 1st Cir. 7/29/21), 2021 WL 3205383, at *4, n.6, <u>writ denied</u>, 2021-01764 (La. 1/19/22), 331 So.3d 325. While Rithm and Ducote have correctly pointed out that Broyles is not entitled to enforcement of Section 1.3(a) of the IPA, having failed to present evidence of a certain sum owed under that section, the fact that Broyles did not couple a claim for a sum certain or other relief with his request for a declaration of his rights to a royalty under the IPA does not invalidate the declaration or bar a subsequent action for supplemental relief based on the declaration. <u>See</u> *State Through Louisiana Riverboat Gaming Comm'n v. Louisiana State Police Riverboat Gaming Enf't Div.*, 97-0167 (La. App. 1st Cir. 6/20/97), 696 So.2d 645, 647, <u>writ denied</u>, 97-1932 (La. 11/7/97), 703 So.2d 1269. <u>See also</u> La. C.C.P. art. 1878 ("Further relief based on a declaratory judgment or decree may be granted

15

whenever necessary or proper."). Therefore, the trial court did not err in entering judgment in favor of Broyles, recognizing his right to a royalty under the provisions of the IPA without awarding a specific amount of money.

**Attorney Fees:**

The trial court awarded attorney fees to Broyles in the amount of $2,500. On appeal, while conceding the IPA and the ancillary agreements provided to Broyles the benefit of recovering attorney fees,[5] Rithm and Ducote claim that such an award could not be made without a hearing on the reasonableness and accuracy of such fees. Attached to Broyles's motion for summary judgment was the affidavit of his attorney, who attested to having billed the amount of $16,958.50 in conjunction with the legal representation of Broyles in this matter and expected to spend at least nine additional hours on the matter. On appeal, Rithm and Ducote complain that the lack of an itemization of the billing left the trial court with the inability to ascertain a reasonable attorney fee.

The trial court is vested with considerable discretion in making an award of attorney's fees, and the award will not be disturbed in the absence of a clear abuse of discretion. *Beau Box Commercial Real Estate, L.L.C. v. Pennywise Sols., Inc.,* 2019-0114 (La. App. 1st Cir. 10/23/19), 289 So.3d 600, 605. The trial court's award was reasonable and, therefore, not an abuse of discretion. The award, which was less than 15% of the amount that Broyles was billed by his attorney, demonstrates that the trial court clearly considered the entirety of the record in fashioning attorney fees in the amount of $2,500.[6] Accordingly, we affirm the

---

[5] The promissory note signed by Ducote on behalf of Rithm stated, "In the event that it is necessary to place this Note in the hands of an attorney for collection or enforcement of any provision of this Note, the Creditor shall be entitled to reasonable [attorney] fees therefor."

[6] Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. *State, Dep't of Transp. & Dev. v. Williamson,* 597 So.2d 439, 442 (La. 1992).

amount of attorney fee awarded.

## DECREE

For these reasons, we affirm the trial court's summary judgment in favor of appellee, Stephen E. Broyles, Jr., as well as the denial of the motion for new trial/reconsideration.[7] All costs of this appeal are assessed against defendants-appellants, Rithm Solutions Group, LLC and Jeremy Ducote.

**AFFIRMED.**

---

[7] For the reasons supporting the affirmance of the judgment granting the motion for summary judgment, we find no abuse of discretion in the trial court's denial of the motion for new trial asserted by Rithim and Ducote. See *Campbell v. Tork, Inc.*, 2003-1341 (La. 2/20/04), 870 So.2d 968, 971 ("The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion.").

STEPHEN E. BROYLES, JR.

VERSUS

JEREMY DUCOTE AND
RITHM SOLUTIONS GROUP, LLC

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0852

 **HOLDRIDGE, J., agreeing in part and dissenting in part.**

I agree in part and dissent in part in this case. I agree with the majority's decision affirming the trial court's judgment awarding Mr. Broyles $122,084.37 and $2,500.00 in attorney fees. However, I do not believe that, in accordance with the agreement, the trial court could award both the money judgment, which represented Mr. Broyles' and Ikon's investment, and a royalty interest in favor of Mr. Broyles.